**THOMAS CORPORATION, Creditor, Appellant,**

v.

**John NICHOLAS, as Receiver and Trustee of Lewis Lee, Inc., Appellee.**

No. 15103.

United States Court of Appeals
Fifth Circuit.

April 20, 1955.

Malvin Englander, Max B. Kogen, Miami Beach, Fla., for appellant.

John G. Dauber, Miami, Fla., E. Albert Pallot and Jepeway & Dauber, Miami, Fla., for appellee.

Before TUTTLE, Circuit Judge, and DAWKINS and SIMPSON, District Judges.

TUTTLE, Circuit Judge.

This is an appeal from an order denying a motion to vacate appellee's discharge as received in bankruptcy. Appellee was appointed Receiver of the involuntary bankrupts, Lee's Health Bar, Inc., and Lewis Lee, Inc., on March 7, 1952, and on that date he took possession of the three Miami Beach stores leased and operated by bankrupts, for the purpose of continuing the businesses. Appellant, the lessor of one of these stores, on April 14, 1952, petitioned the bankruptcy court to terminate the lease under an express power of termination contained therein, conditioned on the filing of an involuntary petition in bankruptcy, appointment of a receiver, or failure to pay rent, etc. The Referee on June 12, 1952, ordered the Receiver to return possession of the premises to the lessor by October 31, 1952, and to pay rent to it in the amount (as amended by later order) of $4,166.66. All of this rent was for the use and occupancy of appellant's premises during the time appellee was carrying on the business as Receiver.

On March 23, 1953, appellee filed his final report as Receiver [1] *without notice*

---

1. This report showed cash receipts during the period of continuing the business, in the sum of $139,226.30. All but the $3.71 transferred to the Trustee's account was

*to appellant,* and on April 1, 1953, the Referee, again without notice to the appellant, entered an order discharging the Receiver and cancelling his bond. Thereafter appellee filed a report as Trustee [2] on July 13, 1953, and petitioned for an order of distribution, giving notice of this petition to appellant and to another unsatisfied creditor of equal priority.[3] The Referee on August 14, 1953, ordered the Trustee to prorate the balance of $1,419.30 between these two claimants. Appellant did not seek a review of this order; but fourteen days later, on August 28, moved to vacate the order of April 1 discharging the Receiver, on the grounds that he had not paid the $4,166.66 as ordered by the court, and that appellant had not received notice of the Receiver's final report or the order discharging him. The Referee denied the motion, saying that it was not filed within ten days of the order, and also that the motion was too late if regarded as an attack on the order of August 14, 1953. The district court affirmed, and this appeal was taken. Appellee has moved to dismiss the appeal on the ground that the district court's order was not appealable, citing Cromelin v. Markwalter, 5 Cir., 181 F.2d 948; and Old Colony Trust Co. v. Kurn, 8 Cir., 138 F.2d 394, 54 Am. Bankr.Rep.,N.S., 742.

Appellee's contention that we do not have jurisdiction to entertain this appeal under § 24 of the Bankruptcy Act, 11 U.S.C.A. § 47, is clearly without merit. The Referee's order and the district court's affirmance effectively preclude appellant from obtaining any relief from appellee in his capacity as Receiver,

certainly as far as the bankruptcy proceedings are concerned; therefore the finality of the order is apparent. And while a motion to vacate an order is addressed to the discretion of the tribunal, an abuse of discretion in denying the motion is reviewable. See Miller v. Tennessee Gas Transmission Co., 5 Cir., 220 F.2d 434. We can see but narrow scope in the discretion of a bankruptcy court to permit an order to stand which was made in such flagrant disregard of § 58, sub. a(5) of the Bankruptcy Act, 11 U.S. C.A. § 94, sub. a(5), in excess of its jurisdiction, see In re Pope, D.C.N.D.Ohio, 101 F.Supp. 503; In re Willis W. Russell Card Co., D.C.D.N.J., 174 F. 202, and above all, completely lacking in the elements of fair notice and opportunity to be heard which inhere in our Constitutional concept of due process. Restatement, Judgments § 2, Comment b. At most, the court has discretion to let the order stand when the party moving to set it aside is guilty of prejudicial delay or unclean hands or is estopped to attack the jurisdiction of the court to enter the order, by conduct reasonably relied upon by the Receiver. We see nothing in the record which would be the basis of laches, unclean hands, or estoppel. In re Curtis, D.C.S.D.N.Y., 5 F.Supp. 829, affirmed 2 Cir., 76 F.2d 751, 28 Am.Bankr. Rep.,N.S., 600, permitted a creditor to obtain an accounting *three years* after the receiver had obtained an *ex parte* discharge; we fully agree with the reasoning of that case, and see no distinction in the present case. We fail to see what difference it makes that the motion came fourteen days after the Referee's order

reported as disbursed for supplies, payroll, licenses, utilities, taxes, etc., and $15,600 was disbursed as rent. According to the affidavit supporting the motion to vacate, which must be accepted as true for the purposes of this appeal, the Receiver failed to pay any rent to appellant, but all of this $15,600 went to other lessors. Neither the names of the payees nor the supporting vouchers are in the record on appeal. The record does not show any court orders authorizing the Receiver to make any of the disburse-

ments listed in his final report, nor does it show that notice of them was given to any creditors.

2. This report of appellee as Trustee shows receipts of $9,172.76, disbursements (apparently all of which were for administrative expenses) of $7,753.46, and a balance of $1,419.30.

3. This creditor is the Mercantile National Bank of Miami, which has a claim of $1,983.94 as subrogee of another lessor of property used by the Receiver.

to pro-rate the small balance remaining in the Trustee's account. Obviously it was the order discharging the Receiver that injured appellant: his relief, if any, must come from the Receiver or his bond, for appellant cannot get and does not seek a larger share of the Trustee's small balance. The appellee has not shown how the delay has prejudiced him in the least, or how he has changed his position. And although it might well have been joined with motions for an accounting and to surcharge the Receiver, the motion to vacate was an entirely appropriate proceeding.[4] We are satisfied also that the motion did not have to be made within the ten-day period allowed by § 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, for an aggrieved party to petition for review of a referee's order,[5] because this order, being ex parte, was defective for want of jurisdiction, and such a defect does not have to be attacked directly but is subject to direct or collateral attack at any time. See In re Willis W. Russell Card Co., D.C.D.N.J., 174 F. 202; In re Snyder, 9 Cir., 4 F.2d 627, certiorari denied McColgan v. Clark, 269 U.S. 556, 46 S. Ct. 19, 70 L.Ed. 409.

The case must be remanded, then, with directions to set aside the order discharging the Receiver and cancelling his bond. Furthermore, it appears to us that the appellant has set out in his motion and affidavit a prima facie right to surcharge the Receiver. There are not many reported cases, and even fewer since the changes made by the Chandler Act, where the bankrupt's assets were insufficient even to pay the costs and expenses of administration;[6] therefore, we think it appropriate to point out for the guidance of the trial court the principles which must determine what relief may be accorded to appellant.

Bankruptcy Act, § 64, sub. a (1), 11 U.S.C.A. § 104, sub. a(1), defines costs and expenses of administration and gives them first priority among the payments to be made from the bankrupt's assets. The expenses of the receiver in carrying on the bankrupt's business are a part of these costs. However, the present Act, unlike former ones, does not create any priority among the various administrative costs themselves when, as here, the assets are insufficient even to pay those costs. "All the costs and expenses lumped together * * * are now obviously on a parity, and if funds are insufficient to pay all of them they must individually suffer pro rata." 6 Remington on Bankruptcy (5th Ed.) § 2632. Although some old cases gave priority to expenses of the receiver and trustee over other expenses in this class (See authorities collected in 6 Remington on Bankruptcy (5th Ed.) § 2640), the later cases divided the assets on a strictly pro rata basis. United States v. Killoren, 8 Cir., 119 F.2d 364, certiorari denied 314 U.S. 640, 62 S.Ct. 78, 86 L.Ed. 513; Todd v. Zoda, 2 Cir., 188 F.2d 84; In re Delaware Hosiery Mills, Inc., 3 Cir., 202 F.2d 951; In re M.K.C. Cafeteria, Inc., D.C. E.D.N.Y., 47 F.Supp. 14; 3 Collier on Bankruptcy (14th Ed.) 1413. The statutory inclusion of all these expenses in one class is a clear indication that they must be treated with absolute equality, unless, of course, some creditors in the class have agreed to subordinate their claims or acquiesced in the receiver's preferential payment of another creditor, with full knowledge of the facts. Cf. Restatement, Trusts § 216.

It is for this precise reason that a receiver should obtain court approval, on notice to all creditors who might be affected, before paying any creditors in this class, however necessary it may be

---

4. Kimm v. Cox, 8 Cir., 130 F.2d 721, 732; 8 Remington on Bankruptcy, 1954 Supp. § 3700.01.

5. Besides, the ten day filing period provision is not jurisdictional, and a court has power to hear a petition for review not timely filed, as we held in Oppenheimer v. Oldham, 5 Cir., 178 F.2d 386.

6. Remington on Bankruptcy (5th Ed.) § 2640: "Where there are no bones to pick, the precedents grow sparse."

290

to preserving the estate. 1 Remington, § 327. See Shipe v. Consumers' Service Co., D.C.N.D.Ind., 28 F.2d 53; 8 Miami L.Q. 132. Such an order protects him under the principles of res judicata. On the other hand, if the receiver fails to obtain such an order, he and all recipients of such payments act at their peril that the payments may later be adjudged improper. In re Lambertville Rubber Co., Inc., 3 Cir., 111 F.2d 45; 6 Remington, § 2661. In view of these pitfalls, Remington says: " * * * it is greatly preferable that all such items be fixed and determined at the same time, when due consideration of them can be had, rather than scattered at random through the proceedings." 6 Remington, § 2647.

■ Where the receiver has not postponed payments until the time of his final accounting nor obtained court approval of every material step he has taken, after notice to any creditors who might be adversely affected by the contemplated action, and where it later turns out that he has distributed the funds in disregard of a creditor's claim, he may be held personally liable or on his bond. United States v. Kaplan, 2 Cir., 74 F.2d 664, 28 Am.Bankr.Rep.,N.S., 110; 6 Remington, § 2335, § 2653 note 17. His good faith is not a defense. 1 Remington, § 348. He may of course have rights to recover money paid to the other creditors which has unjustly enriched them, according to the principles of the law of restitution; but regardless of any such rights he is liable to the disappointed creditor.

Here, the appellant had obtained a court order directing the Receiver to pay its claim. It appears to us that the effect of that order is neither that sought to be established by the appellee nor precisely that urged on us by appellant. On the one hand, it did not merely ascertain a right to participate in an eventual distribution of the estate; nor was it an adjudication that a certain and immutable sum was due and had priority over other administrative expenses. It amounted, we think, to an authorization to the Receiver to pay that amount immediately as the reasonable value of use and occupancy, such authorization protecting him against the objections of all creditors then in the same priority class, who had been given notice of the order and an opportunity to contest it. This would seem to be the fair import of that order; not the appellant's interpretation that it should be granted preferential treatment over other creditors in the same class whether or not these creditors had notice of that order. The latter would, we think, result in appellant's unjust enrichment.

We conclude, then, that appellant is entitled to recover from the Receiver to the extent that officer made disbursements without a court order on notice to appellant and also without its waiver or acquiescence therein with full knowledge of the facts. The quantum of appellant's recovery appears on the present state of the record to be limited to that pro rata share of the assets which it would have received if all payments had been delayed until the Receiver's and the Trustee's final accounting.[7] But it may be that when the Receiver files a new final report, and a properly adverse proceeding is conducted, some payments made by the Receiver may have to be disallowed, so that appellant would be entitled to a larger share of its claim; or perhaps a smaller share, if it develops that appellant had notice of court orders permitting the Receiver to make payments to other members of the same class, that such payments were actually made, and yet the appellant did nothing to protect its right to equal priority.

Reversed and remanded for further proceedings consistent with this opinion.

7. Unless further facts requiring another computation are shown, the method of computing the appellant's share of the bankrupt's assets would be to multiply the total of its claim by the ratio of total receipts in the two accounts to the sum of the actual disbursements and the claims of appellant and the Mercantile National Bank, that is, approximately: