**In re Alex BARRON, Debtor.**

**In re CAPITAL FUNDING MORTGAGE COMPANY, INC., Debtor.**

**Bankruptcy Nos. 85–01530–LM11, 85–01531–LM11.**

United States Bankruptcy Court, S.D. California.

May 15, 1987.

Micheal H. Dodge, John C. Colwell, Law Offices of Micheal H. Dodge, San Diego, Cal., for debtor.

Martin Goldberg, San Diego, Cal., for Examiner: Estes & Hoyt.

MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

I.

INTRODUCTION

At issue is whether 11 U.S.C. § 331 entitles an examiner and his attorney to a

priority for distribution of interim compensation over other 11 U.S.C. § 503(b) administrative claimants when there is a possibility that insufficient funds to pay all administrative claimants in full will exist at the conclusion of the case, thereby necessitating proration.

This court concludes that the broad discretion given to the bankruptcy courts in determining the payment of interim compensation among administrative claimants of the same class is not narrowed by § 331, which does not establish any priorities as to distribution.

## II.

## FACTS

On February 24, 1987, the court heard the following interim fee applications:

| Claimant | Amount Sought |
|---|---|
| Martin Goldberg<br>Examiner | $15,594.60 |
| Estes & Hoyt<br>Attorneys for Examiner | $10,807.88 |
| Mulvaney & Kahan<br>Attorneys for Creditor Deanna M. Peterson | $45,157.37 |
| Sullivan, Delafield, McDonald & Middendorf<br>Attorneys for Creditor Naimco-Clairemont, Inc. | $19,589.81 |

The total sums sought from the four applications heard on February 27, 1987, amounted to $91,167.66.[1] Excluding Mulvaney & Kahan's first fee application, the balance of unpaid fees from prior applications amounted to $27,145.85. An additional $21,000.00 fee application from the debtor's attorney was also anticipated at the time of the hearing, bringing the total of unpaid administrative expenses to approximately $140,000.00.

Through prior applications for interim compensation the law firm of Estes & Hoyt has been paid $17,064.74 towards fees and costs while the firm of Mulvaney & Kahan has received a sum of $18,003.66. Micheal H. Dodge, attorney for both debtor and Capital Funding Mortgage Company, was

previously paid $21,734.44 in interim compensation. The examiner, Martin Goldberg, and the law firm of Sullivan, Delafield, McDonald & Middendorf, were the only administrative claimants before the court who had not yet been awarded any interim compensation.

The examiner held approximately $53,-800.00 in unrestricted funds from which to satisfy these unpaid administrative expenses. The court awarded the examiner payment in the sum of $10,944.60, leaving approximately $42,800.00 in unencumbered funds.[2] Estes & Hoyt was awarded $7,622.78, but payment was deferred pending further order of the court. The fee applications of both creditors who made a substantial contribution to this case per 11 U.S.C. § 503(b)(3)(D) and (b)(4) were taken under submission, with the court requesting supplemental briefing by the parties concerning the priority of payment of administrative expenses.

## III.

## DISCUSSION

■ The Bankruptcy Code does not establish rigid and inexorable rules relating to the payment of administrative expenses which prevent the interest of justice and equity from being served. *In re Wilnor Drilling, Inc.*, 29 B.R. 727, 729 (Bankr.S.D. Ill.1982); *In re Jewish Memorial Hospital*, 13 B.R. 417, 420 (Bankr.S.D.N.Y.1981); *See, Home Indemnity Co. v. F.H. Donovan Painting Co.*, 325 F.2d 870, 876 (8th Cir.1963). The rule that all administrative claimants be treated alike on a pro rata basis in the event there are insufficient assets to pay each claimant in full, does not necessarily require the time and amount of distributions to be similar. *In re IML Freight, Inc.*, 52 B.R. 124 (Bankr.D.Utah 1985). However, it is clearly the law, and undisputed by the parties before the court, that all administrative expenses incurred

---

**1.** Of the $45,175.37 sought by Mulvaney & Kahan, $16,917.50 represents the balance of unpaid fees from their First Fee Application.

**2.** An additional $180,000 in *restricted* funds is currently held by the examiner which might be recovered for the estate if the examiner suc-

ceeds in voiding two underlying deeds of trust as preferential transfers. Pursuit of this litigation could require considerable efforts, and without going into the merits, there is no guarantee that the examiner will prevail.

under 11 U.S.C. § 503(b) are entitled to equal treatment upon the conclusion of a Chapter 11 proceeding.

The genesis of interim compensation is rooted in the equity powers of the bankruptcy court. 2 *Collier on Bankruptcy,* para. 331.01 at 331–3 (15th ed.). In the Ninth Circuit it is well established that the bankruptcy court has wide discretion in allowing the payment of administrative expenses, such as attorney fees, on an interim basis. *Lutheran Hospitals and Homes Society of America v. Duecy,* 422 F.2d 200, 205 (9th Cir.1970); *In re Verco Industries,* 20 B.R. 664, 665 (BAP 9th Cir.1982); *In re Standard Furniture Co.,* 3 B.R. 527, 532 (Bankr.S.D.Cal.1980). Placing the time of payment within the parameters of the court's sound discretion establishes a flexible system which allows consideration of such factors as the particular needs of each administrative claimant, the length and expense of the case's administration, and the amount of available assets, in determining fair and equitable interim distributions pending final resolution of the case. *Matter of Isis Foods, Inc.,* 27 B.R. 156, 158 (Bankr.W.D.Mo.1982); 2 *Collier on Bankruptcy,* para. 331.04 at 331–4 (15th ed.).

■ Estes & Hoyt asserts that the specific authorization in 11 U.S.C. § 331 of interim compensation to an examiner and his attorney, combined with the absence of any code provision expressly allowing an interim payment of creditors who benefit the estate per 11 U.S.C. § 503(b)(3)(D) and (b)(4), entitles their application to be honored before the creditors' applications. However, Estes & Hoyt cites no authority to support this contention. To the contrary, most courts take the stance that whether interim allowances are awarded, and in what amounts, were questions left by Congress to the sound discretion of the bankruptcy court. *In re Callister,* 673 F.2d 305, 306 (10th Cir.1982); *In re Energy Co-Op,* 55 B.R. 957 (Bankr.N.D.Ill.1985).

The legislative history to § 331 unequivocally states:

The *only* effect of this section is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances may be years. The practice of interim compensation is followed in some courts today, but has been subject to some question. This section explicitly authorizes it. H.R. No. 595, 95th Cong., 1st Sess. 330 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 42 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5828, 6286. (Emphasis added).

Interpreting § 331 to declare that Estes & Hoyt *must* be awarded distribution of interim compensation over the two creditors would be inconsistent with both the applicable case law, which gives broad discretion to the court, and the congressional intent behind § 331, which was only to give officers of the estate an *opportunity* to apply for reimbursement. Consequently, this court concludes that 11 U.S.C. § 331 does not entitle officers of the estate to any priority concerning interim compensation over other administrative claimants of the same class.

The final point to consider is whether any restrictions are imposed upon the broad discretion accorded the court concerning interim compensation, where there exists a substantial possibility that all administrative claimants will not be paid in full. Many courts take the position that interim allowances should not be authorized for any administrative claims which exceed the anticipated pro rata pay out to be received during the entire administration of the estate. *In re IML Freight, Inc., supra* at 139; *In re Coconut Grove Bayshore, Inc.,* 33 B.R. 194, 195 (Bankr.S.D. Fla.1983); *In re Standard Furniture Co.,* 3 B.R. 527, 532 (Bankr.S.D.Cal.1980). However, due to the broad discretion available in awarding interim compensation, other courts have reached divergent results. *See, In re Energy Co-op, Inc., supra* at 957, (no interim payments until pro rata share *effectively* determined); *In re Western Farmers Association,* 13 B.R. 132 (Bankr.W.D.Wash.1981), (improper to pay one administrative expense during progress of case and defer payment of

another); *In re Chips N' Twigs, Inc.*, 58 B.R. 109 (Bankr.E.D.Pa.1986), (no interim payments *at all* where it is reasonably clear that the assets of the estate will be insufficient to pay all administrative expenses); *In re Burlington Tennis Associates*, 34 B.R. 839 (Bankr.D.Vt.1983), (interim compensation allowed subject to provision that applicant later reimburse the estate for any amount determined to be over pro rata share).

Rather than establishing any narrow principles of law which limit its discretion regarding interim compensation, this court subscribes to the notion that a flexible structure should be maintained which can best accommodate the special circumstances of each case and achieve equitable results. Chapter 11 reorganization proceedings vary widely in length of time, expense of administration, and most importantly, the prospect of a successful reorganization. The ability to forecast the course of litigation is quite difficult; nearly solvent debtors may suddenly falter and convert to Chapter 7. In many protracted proceedings it is impossible to estimate the anticipated pro rata pay out to be received at the conclusion of the case. Therefore, this court believes that its broad discretion in allowing interim expenses should be infringed upon only by a rule of exercising the utmost caution.

## IV.

## CONCLUSION

In the case at bar, the pro rata share of each administrative claimant is rapidly diminishing as more costs are incurred. However, this court is cognizant that the examiner and his attorney are employed by the estate and must look to the estate for payment of their fees and expenses. As a result this court allowed payment of $10,944.60 in fees and costs to the examiner at the February 24, 1987 hearing in an effort to balance his need for payment against the dwindling amount of assets belonging to the estate.

At the moment approximately $108,000 is outstanding in unsatisfied fee applications with another $21,000 application expected

shortly. The estate possesses approximately $42,800 from which to satisfy these claims. Although $180,000 in restricted funds is potentially available to the estate, Estes & Hoyt has admitted that acquiring this amount could require considerable effort, resulting in even more substantial administrative expenses. This court is also cognizant of the fact that the firm of Sullivan, Delafield, McDonald & Middendorf has expended valuable services to the estate, but yet remains entirely uncompensated by the estate. However, due to the relatively small amount of assets, and that firm's ability to seek payment from its client, Naimco-Clairemont, Inc., this court will pro rate payments to all applicants based on fees requested for current work only and pay these interim fees from the sum of $42,000.00 which represents unrestricted funds on hand in the estate. In short, this court concludes that in view of the benefit provided the estate by all the applicants, a "pay as you go" approach to administrative fees is the fairest method of dealing with the competing administrative claims at this stage of the proceeding. In this regard, the examiner shall still be entitled to received the sum of $10,944.60 previously paid. The award to Estes & Hoyt, shall be reduced to the amount reflected below. Accordingly, interim fees shall be paid as follows:

| Claimant | Amount Claimed | Pro Rata Percentage | Interim Fee |
|---|---|---|---|
| Estes & Hoyt<br>Attorneys for Examiner | $10,807.85 | 13.6 | $5,712.00 |
| Sullivan, Delafield,<br>McDonald & Middendorf<br>Attorneys for Creditor Naimco-Clairemont, Inc. | $19,589.81 | 24.6 | $10,332.00 |
| Mulvaney & Kahan<br>Attorneys for Creditor Deanna M. Peterson | $28,257.87 | 35.4 | $14,868.00 |
| Michael Dodge | $21,000.00<br>(anticipated) | 26.4 | $11,038.00<br>(reserve) |

All interim payments made pursuant to this decision are subject to surcharge in the event that there are insufficient funds to ensure full payment to all applicants upon a final fee hearing, and to ensure pro rata payment to all administrative claimants.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for the examiner is directed to file with

this court an Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.