### In re VERNON SAND & GRAVEL, INC., Debtor.

### Bankruptcy No. B81–01887–Y.

United States Bankruptcy Court, N.D. Ohio.

Sept. 19, 1989.

---

James H. Beck, Canfield, Ohio, for debtor and debtor-in-possession.

Carl D. Rafoth, Youngstown, Ohio, trustee.

Mark Bonaventura, Columbus, Ohio, for State of Ohio, Div. of Reclamation.

WILLIAM T. BODOH, Bankruptcy Judge.

The matter before the Court is the Applications for Allowance of Attorney's Fees made by the attorney for the Debtor-in-Possession, JAMES H. BECK, ESQ. An Objection has been made by THE STATE OF OHIO, DIVISION OF RECLAMATION, to the payment of Mr. Beck's Third and Fourth Applications to this Court. This Court finds that these Objections are well-taken and denies the Applications of Mr. Beck.

### FACTS

The Debtor, VERNON SAND & GRAVEL, INC., was incorporated in 1972 for the purpose of mining and selling sand, gravel, and other crushed stone. On December 18, 1981, the Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code with this Court. The Debtor continued to operate its business, and Mr. Beck was authorized as attorney for the Debtor-in-Possession by an Order of this Court. While acting as attorney for the Debtor-in-Possession, Mr. Beck made two (2) applications to the Court for fees, requesting a total of Twenty Thousand, One Hundred Twenty–One & 69/100 Dollars ($20,121.69) in fees and expenses, all of which was approved and awarded except for Two Thousand, Eight Hundred Twelve & 50/100 Dollars ($2,812.50). In May, 1983, one and one-half years after filing under Chapter 11, the Debtor ceased its operations and the case was converted to a Chapter 7 liquidation.

Shortly before the conversion, Mr. Beck filed his Third Application for Allowance of Fees. In August 1988, he filed his Fourth Application which covered services up to and including those rendered to convert the case to Chapter 7. Altogether, Mr. Beck has applied for the allowance of Twenty–Seven Thousand, Five Hundred Seventy–Two & 59/100 Dollars ($27,572.59) in fees and expenses, of which Seventeen Thousand, Three Hundred Nine & 19/100 Dollars ($17,309.19) has been awarded. By an Order of this Court dated November 14, 1988, 93 B.R. 580, a claim of THE OHIO DEPARTMENT OF NATURAL RESOURCES, DIVISION OF RECLAMATION, was allowed over the Debtor's Objection in the amount of Sixty–Three Thousand, One Hundred Fifty & 00/100 Dollars ($63,150.00) for post-Petition reclamation costs.

The final report of the Chapter 7 Trustee indicates that there are One Hundred Eighteen Thousand, Four Hundred Eleven & 36/100 Dollars ($118,411.36) in unpaid Chapter 11 administrative expenses under Sec. 503 of the Code. After disbursements to pay Chapter 7 administrative expenses, there exists Fifteen Thousand, Seven Hundred Nine & 73/100 Dollars ($15,709.73) with which to pay the remaining Chapter 11 expenses.

## OPINION

The question presented in this case is simply stated: What procedure is followed when, upon conversion of a Chapter 11 case to Chapter 7, there are insufficient funds to pay the Chapter 11 administrative expenses? The issues raised by this question are substantially more far-reaching than the question would indicate.

Sec. 726(b) of the Bankruptcy Code directs that "Payments on claims of a kind specified in paragraph 1 ... of section 507(a) of this title ... shall be made pro-rata." In other words, where there are insufficient funds to pay all the claims of a particular class, those in the class share pro-rata. The only exception to this rule is that where the case has been converted to Chapter 7, Sec. 503(b) administrative claims incurred in Chapter 7 are to be paid before similar claims incurred in Chapters 11, 12, or 13, as the case may be. 11 U.S.C. Sec. 726(b).

In the present case, all of the Chapter 7 administrative expenses have been paid, with one exception to be discussed below. The only remaining distribution is to Chapter 11 administrative claimants. Sec. 503(b) of the Code includes among allowable administrative expenses "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered ... [and] compensation and reimbursement awarded under section 330(a) of this title." Sec. 330(a) includes compensation awarded to the attorney for the debtor-in-possession, in this case Mr. Beck.

The apparent intent of Congress is that all administrative claims should be treated equally. Regardless of the kind of claimant, all Sec. 503(b) expenses should share on the same pro-rata basis if there is not enough money in the end. It is immediately apparent to this Court that from a practical standpoint, this equality does not exist.

For example, the everyday expenses of operating a business after a Chapter 11 petition has been filed are among the actual, necessary costs of preserving the estate.

Sec. 1108 authorizes the trustee/debtor-in-possession to operate the debtor's business without order of the court. It is inherent in the concept of operating the business that employee wages, taxes, supplies, and other types of obligations that would be administrative claims are paid as part of the on-going nature of the business. The business simply cannot function if it must work on credit and delay payment for every matter....

There are no reported opinions concerning immediate payment of business expenses, but *Collier* states

> While the Courts deal gingerly with the payment of professionals, there is a virtually unstated assumption that 'ordinary course of business' administrative expenses (such as current post-petition wages and trade debt) will be paid when due. The courts have not dealt with the question of whether these funds must be refunded if, later, there remains insufficient money for other administrative expenses.

3 *Collier on Bankr.*, 15th ed., Sec. 503.-01.

*In re Pacific Forest Ind., Inc.*, 95 B.R. 740, 742–43 (Bankr.C.D.Cal.1989).

If delays for court approval would deal a staggering blow to debtors-in-possession, then the possibility that these expenses could later be subject to a pro-rata reduction would be the knockout punch. Businesses operating under Chapter 11 would not be able to retain employees, hire outside services, or even maintain accounts with utility companies if each of these payments were subject to refund at a later date if the business eventually converts to liquidation bankruptcy. Practical necessities require that administrative expenses resulting from the ordinary course of business be paid immediately and not be subject to any pro-rata reductions.

The result of this interpretation is an unequal treatment of Sec. 503(b) claims if a debtor converts from Chapter 11 to Chapter 7. In this situation, some ordinary course expenses will have been paid in full before the conversion. Other ordinary course claimants will have been paid in part

but will have the Sec. 503(b) claim remaining unpaid after the conversion. For example, in the present case, approximately Twenty–Five Thousand & $^{00}/_{100}$ Dollars ($25,000.00), or one-fifth ($\frac{1}{5}$th) of the Chapter 11 administrative claims, are for unpaid wages. Presumably, these claimants are the same employees who worked, and were paid in full for services, during the eighteen months the Debtor operated its business under Chapter 11. The claims now considered are for the wages remaining unpaid, probably for the last month before conversion. In a sense, these employee-claimants have "collected" 95 percent (95%) of their total claims.

Similarly, the attorney for the Debtor-in-Possession in this case, Mr. Beck, has been awarded fees by this Court on an interim basis pursuant to Sec. 330. So far, Mr. Beck has received approximately 62 percent (62%) of the total fees he has requested in this case. Like the employees, Mr. Beck has received compensation for a portion of the services he has provided, and he currently has an administrative claim for that portion which remains uncompensated. Finally, some administrative claimants, such as The Ohio Division of Reclamation, have received no part of their Sec. 503(b) claims.

In summary, when a Chapter 11 business converts to Chapter 7, all Sec. 503(b) claimants are not on an equal footing. Some ordinary course administrative claimants have been paid in full; others were paid throughout the period of the business's operation, but have claims remaining. Some professional administrative claimants have received interim compensation under Sec. 330, which has paid their claims in full; some have been paid in part and have claims remaining. Other administrative claimants have received nothing. Theoretically, all of these entities are to share equally on the same pro-rata basis.

■ These claimants will not share equally because, as noted, we cannot require paid ordinary course expenses to be refunded without paralyzing the Chapter 11 business. It is fairly well-settled, however, that this Court may require profes-sional fees to be disgorged to achieve a pro-rated deduction. In *In re Kaiser Steel Corp.*, 74 B.R. 885 (Bankr.D.Colo.1987), the court noted:

> If some administrative expenses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro-rata.

*Kaiser*, 74 B.R. at 891. Also, in *In re Burlington Tennis Assoc.*, 34 B.R. 839 (Bankr.D.Vt.1983), the court noted that most Chapter 11's in its jurisdiction result in conversions to Chapter 7 and that "it is only at the conclusion of the case that a determination of the full value of the services performed by the particular professional or fiduciary can be made...." *Burlington*, 34 B.R. at 841.

Permitting the disgorgement of professional fees when other administrative claims are not refunded to the estate may appear to be a harsh burden on professionals, especially the bankruptcy bar. However, in this regard, this Court agrees with the distinctions and policies articulated in *Pacific Forest*:

> The Code ... deals differently with fees of professionals than with payment of other people who provide services to the debtor. Employees do not need 'permission' to be paid and are usually paid as part of the on-going operation of the business.... It is only those who deal with the actual reorganization of the debtor (rather than the on-going business of the debtor) who are required to be employed under Section 327 and whose applications for payment must be approved by the court. [The court then notes the careful scrutiny given to fee applications of professionals].
>
> Whether Congress intended it or not, the fact that attorneys for the debtor-in-possession will not be paid on a regular basis keeps the attorney alert to the on-going reorganization chances of the debtor. It does the attorney no good to build up a massive Chapter 11 administrative

claim, which will then be subordinated in a later Chapter 7.

*Pacific Forest*, 95 B.R. at 743. The same policy exists in the present case. Attorneys are less likely to allow a Chapter 11 business to continue when they are amassing fee bills which may go unpaid. Courts, too, should be more reluctant to award interim compensation where the reorganization chances of the Debtor are poor or where it appears there will be insufficient funds to pay administrative claims should there be a conversion.

 It should be noted that the Bankruptcy Court has wide discretion in the awarding of fees. *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 422 (9th Cir. 1983); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 894 (1st Cir.1985); *Matter of Lawler*, 807 F.2d 1207, 1211 (5th Cir.1987). Various courts have employed several different methods for restricting the award of fees when there are (or when it appears there will be) insufficient funds to pay administrative claims. *In re Barron*, 73 B.R. 812, 814–15 (Bankr.S.D.Cal.1987).

 In the present case, we choose to exercise our discretion to sustain the Objection of the Ohio Division of Reclamation. The Third and Fourth Applications of Mr. Beck for compensation are denied; however, we will not require Mr. Beck to disgorge fees already paid to him. There are several reasons for this result.

First, and most importantly, a refund of fees was not requested in the Objection of the Ohio Division of Reclamation. Therefore, the merits of this possibility have not been fully argued before the Court, and Mr. Beck has not been given the opportunity to address specifically that contingency.

Second, requiring a refund of fees would be of little benefit to the estate compared to the administrative burden it would create. Presumably, there are other Sec. 503(b) expenses (such as accountant's fees) which relate solely to the administration of the Debtor's reorganization and which would have to be refunded along with Mr. Beck's. Such fees would have been paid eight years ago when the Debtor was operating in Chapter 11 and would be difficult to collect now. Regardless of other fees, requiring the refund of Mr. Beck's fees will result in an increase in the pro-rata share of about nine cents ($.09) on the dollar. While that amount may be more than nominal, it hardly seems worth further delays and administrative efforts.

Third, the policy articulated in *Pacific Forest* remains intact. Although Mr. Beck will receive more fees than the share to which he would have been entitled had none been paid on an interim basis, he was not paid in full. Chances are, in the future Mr. Beck will be more acutely aware of when there are insufficient funds to pay his own salary.

Finally, the Court notes that Mr. Beck may have a Chapter 7 administrative claim which should be paid before Chapter 11 administrative claims are paid. This arises from the fact that he performed services for the Chapter 7 Debtor, rather than the Debtor-in-Possession, when he prepared and filed a motion to convert. His Fourth and Final Fee Application indicates services which cover the conversion and occur subsequent to the conversion. Mr. Beck did not file a separate claim for these services. The issue of a Chapter 7 administrative claim was raised at oral argument; however, it was only summarily treated there and it has not been addressed in the briefs submitted to the Court. This Court will not separate Mr. Beck's Chapter 7 claim to be paid first, because it has not been requested of the Court and because Mr. Beck is already receiving more compensation on his Chapter 11 claim than the pro-rata share to which other claims are being reduced.

For the reasons set forth herein, the Third and Fourth Applications of JAMES H. BECK, ESQ., for compensation as attorney in this case are overruled. An appropriate Order shall issue.