**In re FLORIDA WEST GATEWAY, INC., Debtor.**

**Bankruptcy No. 92–14091–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida, Miami Division.

April 22, 1994.

Edward Rothberg, Weycer, Kaplan, Pulaski & Zuber, P.C., Houston, TX, for Aectra Refining & Marketing, Inc.

Harold D. Moorefield, Jr., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, FL, for trustee.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART MOTION OF AECTRA REFINING & MARKETING, INC. FOR PAYMENT OF ADMINISTRATIVE CLAIM

A. JAY CRISTOL, Chief Judge.

In this contested proceeding, AECTRA REFINING & MARKETING, INC. ("Aectra") originally sought an order requiring immediate payment of an administrative expense claim in the amount of $101,390.63. This claim is for jet fuel sold during 1993 in the ordinary course of business to Joel Tabas, the operating Chapter 11 Trustee. The Trustee does not dispute the amount of Aectra's administrative claim, nor that it represents an actual and necessary expense of preserving the estate within the meaning of 11 U.S.C. Section 503(b)(1)(A). Rather, the Trustee asserted that he is unable to pay the full amount of Aectra's claim because the estate is administratively insolvent. According to the Trustee, there are approximately $2 million in unpaid administrative claims, and only $515,000 in cash. On the basis of the Trustee's report, Aectra orally modified its motion to request an interim distribution of 25.75% (i.e. $515,000/$2 million) of its allowed claim. The Trustee asserts, however, that Aectra is not entitled to any *pro rata* distribution because previous post-petition payments made for fuel delivered in the ordinary course of business will enable Aectra to receive a larger percentage return than other similarly situated administrative creditors. Aectra asserts that the Trustee cannot look back to such previous payments to determine the amount of its *pro rata* distribution. Rather Aectra maintains that it, and all of the other administrative creditors, are simply entitled to a pro rata portion of the funds remaining on hand. As discussed more fully below, if the Trustee's assertion is correct, then every employee, utility company, supplier and vendor paid in the ordinary course of

business during a Chapter 11 case could be subject to a *pro rata* reduction of its unpaid claim or even disgorgement. Such a rule would virtually eliminate the ability of any Chapter 11 Debtor to operate, because vendors would not extend credit if the amounts actually paid to them during the pendency of the case could somehow cause a reduction of the amount of their unpaid claim.

*Facts*

This Chapter 11 case was filed on May 7, 1992. The Debtor, FLORIDA WEST GATEWAY, INC. ("Florida West") operated its air cargo business as a Debtor-in-Possession until July 30, 1992, when Joel Tabas was appointed as the operating Trustee. After this appointment, Aectra commenced selling kerosene-based aviation turbine fuel to the Trustee in the ordinary course of business. The terms of sale were that the Trustee would pay for the fuel upon receipt of the invoice and supporting documentation. Under these terms, the Trustee paid Aectra $342,717.44.

In 1993, the Trustee decided to sell substantially all of the Debtor's assets, and shut down the business. At the time of sale, the Trustee owed Aectra $101,390.64 for fuel. Unfortunately, the sale did not bring in sufficient funds to fully satisfy administrative claims. As indicated above, the Trustee has not paid any portion of this claim.

According to the Trustee, when payments already made to Aectra for fuel purchased in the ordinary course of business are taken into account, Aectra has already received 77% of its administrative claim (i.e. $342,717.44 out of sales totalling $444,108.08). The Trustee argues that Aectra should not be entitled to any additional payments because when all payments made in the ordinary course of business to other similarly situated creditors are taken into account, such creditors have received an average of only 72.95% of their administrative claims. Thus, the Trustee asserts that any distribution to Aectra would violate the principle of equality of distribution. In effect, the Trustee is reducing Aectra's unpaid administrative claim because of payments it previously received in the ordinary course of business. As discussed below, the Trustee may not consider prior payments made in the ordinary course of business in determining the correct amount of *pro rata* distribution for any administrative expense claim.

*Legal Analysis*

 This issue was first addressed in *In re Western Farmers Association*, 13 B.R. 132 (Bkrtcy.W.D.Wash.1981). There, the court was faced with a situation where a variety of non-ordinary course administrative claims, including professional fees and reclamation creditors, might not be paid. The Debtor's counsel argued that it was entitled to an interim distribution since the Debtor was currently paying other expenses such as employees' salaries, utility charges and other expenses incurred in the ordinary course of business which also constitute administrative expenses. In response to this argument the court held that,

> When there is the possibility that the assets of the estate will not be sufficient to cover all expenses of administration, it is legally improper to pay one expense of the Debtor or Debtor-in-Possession before paying another, *except those incurred in the ordinary course of the Debtor-in-Possession's business operation.*

*Id.* at 136. As the underlined portion of this quote indicates, a Trustee is required to make payments of administrative expenses incurred in the ordinary course of business even if there are insufficient assets to pay all unpaid administrative claims in full. If such is the case, it stands to reason that the Trustee cannot reduce the distribution to the holder of an unpaid administrative claim based on payments previously made to the same creditor in the ordinary course of business.

This theme was followed up in *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255 (Bkrtcy.N.D.Ohio 1989). There, an administrative creditor objected to fee applications filed by the Debtor's attorney in a converted Chapter 11 case, where there were insufficient funds to pay all Chapter 11 administrative claims in full. The court held that even though Congress indicated an intention in Section 726(b) that all administrative claims be treated equally, such equality does not exist. As an example, the court cited payments for wages, taxes and supplies made to

operate the business pursuant to Section 1108. It stated,

> It is immediately apparent to this Court that from a practical standpoint, this equality does not exist.... [T]he possibility that these expenses could later be subject to a pro-rata reduction would be the knockout punch. Businesses operating under Chapter 11 would not be able to retain employees, hire outside services, or even maintain accounts with utility companies if each of these payments were subject to refund at a later date if the business eventually converts to liquidation bankruptcy. *Practical necessities require that administrative expenses resulting from the ordinary course of business be paid immediately and not be subject to any pro-rata reductions.*

*Id.* at 257. The court went on to conclude that it only had authority disgorge or reduce the unpaid administrative claims of professionals.

Finally, in *In re Telesphere Communications, Inc.,* 148 B.R. 525 (Bkrtcy.N.D.Ill. 1992) the court distinguished administrative expenses approved under Section 503(b) which are subject to a *pro rata* reduction in the event of insolvency, and "operational payments" made by a Debtor-in-Possession or Trustee under the authority of Section 363(c)(1) and 1108. The court stated,

> [V]endors who receive payments from the Trustee or Debtor-in-Possession, for value in the ordinary course of business under Section 363(c)(1), need not fear that the money they receive is subject to disgorgement. *Cf.* Uniform Commercial Code Sec. 9–306, Comment 2(c) (cash payments by a Debtor are not subject to a security interest when transferred in the ordinary course of the Debtor's business). *Thus, operational payments, by their nature, enjoy a de facto priority over other administrative expenses, without any express provision for superpriority.*

*Id.* at 531.

Under the rationale of these cases, neither Aectra nor any other administrative creditor, should have the distribution with respect to their unpaid administrative claim reduced merely because it was paid in the ordinary course of business for prior sales. Rather, the remaining balance should be treated as a Section 503(b) administrative claim, and paid *pro rata* with all other unpaid administrative creditors.

■ There is further support for this position in Section 547. This provision attempts to promote the goal of equality of distribution by authorizing a trustee to recover certain preferential payments made to creditors prior to bankruptcy. One of the statutory defenses to such an action is that the payment was made in the ordinary course of business. *See* Section 547(c)(2). The Court is unaware of any authority supporting the proposition that a creditor who received a payment in the ordinary course of business prior to bankruptcy should have its remaining claim reduced in order to equalize the payments made to all creditors. The Court does not see any justification for altering this rule merely because the payment occurred after bankruptcy. In fact, it could be argued that such payments should receive special protection in order to encourage vendors to extend credit to Chapter 11 debtors and thereby improve the chances of a successful reorganization.

The Trustee primarily relies for his position on *Thomas Corp. v. Nicholas,* 221 F.2d 286 (5th Cir.1955) decided under the old Bankruptcy Act. A review of this case indicates that it has been superseded by the Bankruptcy Code. In *Thomas,* the receiver appointed to operate the business failed to honor a specific court order to pay a landlord's administrative rent claim in the amount of $4,166. After the business failed, and all assets were liquidated, the receiver only had $1,419 on hand to distribute between the landlord and one other administrative creditor. The landlord requested the Court to vacate the order discharging the trustee and his bond. In reaching its decision to vacate the discharge order, the Fifth Circuit stated that the recipients of any "improper payments" assume the risk that such payments will later be judged improper, and recouped. The Court defined "improper payments" to mean payments made by the receiver without notice to creditors and court approval. This case is no longer applicable under the Code because Trustees are authorized under Section 363(c)(1) and 1108 to

make payments in the ordinary course of business without notice to creditors and court approval. Thus, such "ordinary course" payments are not "improper", and cannot be recouped.

The other cases cited by the Trustee which were decided under the Code all deal with the disgorgement of fees by professionals. These cases do not specifically address the question of whether payments made to vendors in the ordinary course of business during a Chapter 11 case should be taken into account in determining the distribution with respect to their outstanding administrative claims when the estate is insolvent.

■ Although the foregoing addresses the method for calculating the *pro rata* amount of Aectra's distribution, it does not address the timing of such a distribution. As stated above, Aectra is seeking a partial interim distribution. The Trustee argues that any distribution should await the closing of the case.

■ This Court has the authority to award interim partial distributions of administrative expense claims in amounts not to exceed their *pro rata* distribution. *See In re Barron,* 73 B.R. 812, 813 (Bkrtcy.S.D.Cal.1987); *In re IML Freight, Inc.,* 52 B.R. 124, 139 (Bkrtcy.D.Utah 1985). The Court is of the opinion that Aectra should not receive an interim distribution of 25% of its claim at this time. The Trustee has sold all of the tangible assets of the estate, and shut down all operation. It appears that the only remaining assets are cash in the amount of $515,-000.00, various complex causes of action against the former shareholders, which are or will be handled on a contingency fee basis, and some accounts receivable. Most likely, the case will soon be converted to Chapter 7. When the Trustee, or the Chapter 7 Trustee have determined that they have no need for the funds currently on hand, except to pay administrative claims, they may make interim distributions in their discretion.

On the basis of the foregoing, it is

**ORDERED that:**

1. Aectra is allowed an administrative expense claim in the amount of $101,390.63.

2. The Trustee shall not make an interim distribution to Aectra of $25,347.64 with respect to its administrative claim, but said creditor shall await the conclusion of the case for distribution of its *pro rata* share of its administrative expense.

3. The Trustee, in calculating *pro rata* distributions to the holders of unpaid administrative claims, shall not take into account previous payments made in the ordinary course of business.

4. The Trustee shall move with all possible haste in winding up this case and may in the Trustee's discretion make interim payments of administrative claims to all unpaid administrative claimants.

**DONE and ORDERED.**