**In re FLORIDA WEST GATEWAY, INC., Debtor.**

**Bankruptcy No. 92–14091–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Jan. 17, 1995.

Harold D. Moorefield, Jr., Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, for Trustee.

Joel L. Tabas, Chapter 11 Trustee and the Chapter 7 Trustee, Miami, FL.

Michael E. Greene, Niemark, Greene & Nadel, P.A., Coral Springs, FL, for Aectra Refining and Marketing.

Edward Rothberg, Weycer, Kaplan, Pulaski & Zuber, P.A., Houston, TX, for Aectra Refining and Marketing.

Michael Wright, Lake Charles, LA, for debtor.

Steven Turner, Sr. Atty., Miami, FL, Advisor for the U.S. Trustee.

## ORDER GRANTING MOTION FOR CLARIFICATION AND RECONSIDERATION OF MEMORANDUM OPINION AND ORDER GRANTING IN PART AECTRA'S MOTION FOR PAYMENT OF ADMINISTRATIVE CLAIM

A. JAY CRISTOL, Chief Judge.

THIS CAUSE came before the Court for hearing on June 7, 1994, and again on August 10, 1994, upon the Trustee's, Joel L. Tabas, Motion for Clarification and Reconsideration of Memorandum Opinion and Order Granting In Part Motion of Aectra Refining and Marketing, Inc. For Payment of Administrative Claim, filed May 6, 1994 ("Motion for Reconsideration"). Aectra filed a Motion to Dismiss the Motion for Reconsideration, requesting that the Court dismiss the Motion for Reconsideration.

After having heard argument, proffers and representations of counsel for all interested parties, the Court hereby renders the following findings of fact and conclusions of law.

### Procedural Background

During the course of the Trustee's administration of this Chapter 11 case, the Trustee purchased aviation fuel from Aectra. The Trustee purchased a total amount of $444,108.08 worth of fuel during the period from September, 1992 through June/July, 1993, for which the Trustee paid Aectra only $342,717.44.

Aectra thereafter sought the immediate payment of the unpaid balance of $101,390.64. The Trustee objected to the immediate payment of Aectra's remaining unpaid balance on the basis that Aectra had been paid in excess of its pro rata share of its total administrative expense.

During the course of the administration of the estate, and to preserve the assets of the estate, the Trustee has incurred various costs, one of which is the cost of aviation fuel purchased from Aectra. All payments by the Trustee for the expenses incurred during the administration of this estate have been paid approximately 71% of the total amount for any one expense. However, the Trustee has calculated he has paid 77% of the expense the estate has incurred for the purchase of aviation fuel from Aectra.

This Court's Memorandum Opinion and Order Granting in Part Motion of Aectra for Payment of Administrative Claim ("Memorandum Opinion") did not determine whether Aectra had been paid a percentage of its administrative expense or whether it had been paid on parity with other similarly situated creditors. Instead, the Memorandum Opinion simply stated that Aectra would be allowed an administrative expense claim in the amount of $101,390.63, the immediate payment of which would be denied.

The Court further stated in its Memorandum Opinion that Aectra must await the conclusion of the case "for distribution of its pro rata share of its administrative expense." The Court noted that in calculating the "pro rata distributions to the holders of unpaid administrative claims," the Trustee should not take previous payments made in the ordinary course of business into account ("Ordinary Course Payments").

Trustee's Motion for Reconsideration requests a determination as to whether Aectra has already been paid a percentage of its administrative expense claim, and if so, the exact percentage. The Trustee's Motion for Reconsideration also requests the Court clarify its statement that the Trustee not consider payments made in the ordinary course of business in determining whether each administrative expense claim has been paid its pro

rata distribution. The Trustee asserts the Memorandum Opinion does not distinguish between the calculation of the total amount of a creditor's administrative claim and the calculation of the amount of an administrative claim which is subject to disgorgement.

### *Analysis*

■ The Trustee urges this Court to adopt the analysis that all debt incurred by the Trustee during the administration of the estate, to preserve the assets of the estate, are administrative expenses. The Trustee urges this interpretation regardless of whether payments on any such debt were made in the ordinary course of business. The Court agrees with the Trustee's analysis and, to the extent the Memorandum Opinion states otherwise, the Court grants Trustee's Motion for Reconsideration and clarifies its Memorandum Opinion in the following respects.

#### 1. *Administrative Expenses*

Administrative expense status is granted to claims representing post-petition debts incurred by the debtor to preserve the estate. *In re Keegan Utilities Contractors, Inc.,* 70 B.R. 87 (Bankr.W.D.N.Y.1987). The Code explicitly provides that all unsecured debts incurred by an estate in the ordinary course of business may be allowable as administrative expenses under § 503(b)(1). 11 U.S.C. § 364(a). Such ordinary course administrative claims do not require notice and hearing. 11 U.S.C. § 364(a).

■ Three (3) factors are determinative of administrative expense status under 11 U.S.C. § 503: (i) the claim must be derived from debt incurred post-petition, (ii) the claim must arise in connection with a transaction between the claimant and the Trustee, and (iii) the claim must represent a debt incurred to benefit the debtor or the estate in the operation of its business. *Id.*

The purchase of aviation fuel by a Chapter 11 estate operating as an airline is an administrative expense of the estate.[1] 11 U.S.C.

§§ 364(a) and 503(b)(1). Aectra's claim against the estate for the payment of this administrative expense arose, and increased, with each purchase on credit of aviation fuel by the Trustee. With each payment made by the Trustee for the fuel, whether in the ordinary course of business or not, Aectra's *outstanding claim* against the estate decreased but the *total administrative expense* incurred by the Trustee for the purchase of fuel remained constant. In fact, to argue otherwise would render § 364(a) a nullity and mean that Aectra received payments for which it never had an administrative claim. Thus, this Court concludes that the entire expense incurred by the estate for the purchase of fuel, whether partially paid in the ordinary course of business during the administration of this case, is Aectra's total administrative expense claim.

#### 2. *Payments in the Ordinary Course of Business*

The cases previously cited in the Memorandum Opinion supporting the Court's conclusion that payments in the ordinary course of business not be taken into account in determining a creditor's administrative expense claim are not applicable in this instance. Although all of the previously cited cases reinforce the proposition that all administrative claims be treated equally, those cases focus on the issue of whether payment for administrative expenses made in the ordinary course of business enjoy a de facto priority because they are not subject to disgorgement. Because the Trustee does not seek disgorgement, the Court recedes from its reliance on the cited caselaw.

For example, *In re Vernon Sand & Gravel, Inc.,* 109 B.R. 255 (Bankr.N.D.Ohio 1989), the *Vernon* Court noted that, although Congress intended all administrative claims be treated equally, this equality may not exist in the context of pro-rata reductions of administrative expenses paid in the ordinary course of business, stating:

> Practical necessities require that administrative expenses resulting from the ordi-

---

1. The parties do not dispute that the purchase of aviation fuel from Aectra by the Trustee was an "actual, necessary" cost and expense of preserv-

ing the estate but dispute the amount to be considered as Aectra's "administrative expense claim."

nary course of business be paid immediately and not be subject to any pro-rata reductions.

The Court observed that, to hold otherwise, businesses operating under Chapter 11 would not be able to retain employees, hire outside services, or even maintain accounts with utility companies if these payments were subject to refund due to administrative insolvency or liquidation of an estate. The Trustee does not disagree with this proposition.

Likewise, in *In re Telesphere Communications, Inc.*, 148 B.R. 525 (Bankr.N.D.Ill.1992), the Court focused its analysis on administrative expenses *subject to pro-rata reduction.* In *Telesphere Communications*, the Court determined that payments made in the Debtor's ordinary course of business, "by their nature, enjoy a de facto priority over other administrative expenses," because such Ordinary Course Payments are not subject to disgorgement. The Court's reasoning follows the reasoning found in *Vernon*, 109 B.R. 255. *See also In re Western Farmers Association*, 13 B.R. 132 (Bankr.W.D.Wash.1981) (Debtor or Trustee may pay an administrative expense incurred in the ordinary course of business, despite that there might not be sufficient assets to pay all administrative expenses).

The Trustee herein is not seeking disgorgement of any excess monies Aectra may have been paid on its total administrative expense claim, above the pro-rata distribution received by other administrative claimants, as this Court initially believed. If he were, the "ordinary course of business" exception created by the caselaw would apply, and the Trustee would then be obligated to determine which payments were made in the ordinary course of business so as to determine which payments would not be subject to disgorgement. However, disgorgement is not an issue in this case, and the Court, therefore, concludes it is not necessary for the Trustee to evaluate whether the payments made to Aectra were in the ordinary course of business.

### 3. Distribution on Administrative Expense Claims

■ Claims incurred during the course of the administration of an estate are to be treated equally. *In re IML Freight Inc.*, 52 B.R. 124 (Bankr.D.Utah 1985); *In re Western Farmers Assn.*, 13 B.R. 132; *United States v. Kalishman*, 346 F.2d 514 (8th Cir. 1965); *State of Missouri v. Earhart*, 111 F.2d 992 (8th Cir.1940). If the estate has insufficient funds to pay all claims within a class in full, all class claimants must share pro-rata among available assets. *Thomas Corp. v. Nicholas*, 221 F.2d 286 (5th Cir. 1955) (if funds are insufficient to pay all claims within a given class, they must individually suffer pro rata); *In re Columbia Ribbon Co.*, 117 F.2d 999 (3rd Cir.1941); *Earhart*, 111 F.2d 992.

The quantum of a claimant's recovery is limited to that pro-rata share of assets which it would have received if all payments had been delayed until the final accounting. *Thomas Corp.*, 221 F.2d 286. In *Thomas Corp.*, an administrative claimant sought to participate in a distribution of the estate's assets. 221 F.2d at 290. After determining the claimant was entitled to participate in the distribution of the estate's assets, the Fifth Circuit computed the claimant's share of assets it was entitled to receive in payment of its claim. The Court stated that the quantum of claimant's recovery was limited to that pro-rata share of assets which it would have received if all payments had been delayed until the final accounting. *Id.* It further stated that such distribution is calculated by *multiplying the total amount of the creditor's claim by the ratio of the estate's total receipts to the sum of the actual disbursements. Id.* at n. 7 (emphasis added). This calculation results in the determination that Aectra's total administrative expense claim totals $444,108.08, 77% of which has been paid.

### 4. Equitable Considerations

The rule of law requiring that administrative claimants be treated alike in the event there are insufficient assets to pay each claimant in full is consistent with principles of fairness and equity. If Aectra were to receive payment of 71% of the balance of its administrative expense claim ($101,390.63), it would receive an additional $72,000.00, there-

by allowing Aectra to receive total payments of approximately $414,717.44, or 93% of the total amount of its administrative expense claim. Such a distribution is disproportionate with the distribution made to other similarly situated administrative claimants, and would cause Aectra to be unjustly enriched to the prejudice of other administrative claimants who have received a pro rata distribution on their claims less than Aectra already has received.

For instance, the Debtor's former employees are seeking payment of administrative expense claims for unpaid post-petition healthcare coverage, resulting from the Debtor's failure to fund insurance coverage plans. These claimants have incurred medical expenses, but have not been paid any amount on their claims.[2] If the medical claims of these employees are allowed as administrative expenses of the estate, then payment on the remaining balance of Aectra's administrative expense claim could result in the Trustee having insufficient funds to pay an equal pro-rata payment to the employees on their healthcare claims.

If these employees with claims for payment of post-petition healthcare coverage had been partially paid in the ordinary course of business during the administration of the case, and Aectra had not been paid any amount for its fuel, assuredly Aectra would agree that those payments must be taken into account when determining whether the employees had received their appropriate pro-rata distribution from the estate.

### Conclusion

If this Court's conclusion in its Memorandum Opinion is inconsistent with its conclusion herein, the Memorandum Opinion is hereby clarified to read consistently with this Order. Any other result would be inequitable. If a Trustee can continue to pay administrative expenses during the case, and if the total amount of administrative expenses were deemed to be diminished with each payment, then the Trustee would constantly be recalculating a claimants pro-rata distribution because the denominator, the total administrative expenses incurred, would always be changing. This result is not only burdensome on the Trustee, but would result in an illusory pro-rata distribution.

Accordingly, it is

**ORDERED** that the Trustee's Motion for Reconsideration is granted and the Memorandum Opinion is clarified as follows:

1. Aectra's administrative expense claim totals $444,108.08;

2. Aectra has received payment of 77% of its administrative expense claim;

3. Aectra's outstanding administrative expense claim totals $101,390.64.

DONE and ORDERED.

2. The Trustee has obtained a bar date from this Court for the filing of all administrative expense claims, including those claims for healthcare coverage, so he may finally determine the total amount of administrative expenses incurred during the administration of this estate. Until all administrative expense claims are filed, the Trustee cannot determine the pro-rata share of payment to which all administrative claimants will be entitled.