**In re WISE TRANSPORTATION, INC., Debtor.**

**Bankruptcy No. 85–01151–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Dec. 7, 1992.

J. Schaad Titus, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, for creditor.

P. Gae Widdows, Howard & Widdows, Tulsa, OK, for debtor.

## ORDER

MICKEY DAN WILSON, Bankruptcy Judge

On November 20, 1992, there came on for hearing in the above-styled case under 11 U.S.C. Chapter 7 the "Trustee's Final Report and Proposed Distribution," an "Objection to Trustee's Final Report and Proposed Distribution" filed by Howard and Widdows, P.C., and an "Amended Trustee's Final Report and Proposed Distribution." At said hearing, there appeared Kenneth L. Stainer, Trustee; P. Gae Widdows for the law firm of Howard and Widdows, P.C.; J. Schaad Titus for creditor F & M Bank and Trust Company; and Kathryn Vance, Assistant U.S. Trustee. At said hearing, the Court received stipulations of fact, took judicial notice of its own previous orders in this case, heard statements and arguments of counsel, and thereupon took the matter under advisement. On November 25, 1992, F & M Bank and Trust Company filed its "Response to Objection to Trustee's Final Report and Proposed Distribution and Objection to the Amended Trustee's Final Report and Proposed Distribution." Upon consideration thereof, and of the record herein, the

Court, pursuant to F.R.B.P. 7052 and 9014, finds, concludes, and orders as follows. Certain legal conclusions, which are not in dispute and which form part of the background of the present contested matter, are recited among "Findings of Fact."

## FINDINGS OF FACT

On July 22, 1985, Wise Transportation, Inc. ("Wise Inc.") filed its voluntary petition for relief under 11 U.S.C. Chapter 11 ("Ch. 11") in this Court. Wise Inc. was represented by the law firm of Howard and Widdows, P.C. ("H & W"). At that time, Wise Inc. owed approximately $625,000 to F & M Bank and Trust Company ("the Bank"). This debt was secured by various items of collateral. Among them, the Bank held a valid, perfected security interest in Wise Inc.'s accounts receivable. These accounts receivable, or rather the proceeds therefrom, constituted "cash collateral" under 11 U.S.C. § 363(a), (c)(2). However, pursuant to 11 U.S.C. § 552, the Bank's security interest would not attach to assets, including receivables, acquired post-petition by Wise Inc.

After filing Ch. 11, Wise Inc. sought this Court's permission to use the accounts receivable, which were cash collateral, to fund Wise Inc.'s post-petition business operations. The Bank objected thereto. This Court allowed Wise Inc. to use this cash collateral. But, as adequate protection therefor under 11 U.S.C. § 361, § 363(e), the Court gave the Bank a security interest in all assets, including receivables, which Wise Inc. acquired post-petition.

Wise Inc. proceeded to collect its prepetition accounts receivable, acquiring money which was then spent on Wise Inc.'s continuing post-petition business operations. But Wise Inc.'s business faltered; and its attempt to reorganize failed. On July 24, 1986, the Court ordered the appointment of a Ch. 11 Trustee, to take over control of Wise Inc.'s estate from Wise Inc.'s former management and from its attorneys H & W. On July 30, 1986, Kenneth L. Stainer was appointed Ch. 11 Trustee. Later, the case was converted to a case under 11 U.S.C. Chapter 7 ("Ch. 7").

Kenneth L. Stainer continued to serve as Ch. 7 Trustee ("the Trustee").

On July 24, 1986, the same day they were ordered displaced by appointment of a Trustee, H & W filed an "Application for Interim Allowance of Compensation and Reimbursement of Expenses." After hearing on September 19, 1986, the Court awarded H & W $13,250 in fees and $950 in expenses for a total of $14,200. This award was memorialized by written order filed October 15, 1986.

Approximately $440,000 in proceeds of accounts receivable was collected during the Ch. 11 and Ch. 7 proceedings. All of this was cash collateral, subject to the Bank's security interest and entitled to adequate protection. Approximately $200,000 has been repaid to the Bank. This leaves approximately $240,000 which should still be repaid to the Bank. This $240,000 shortfall represents cash collateral which was used, and used up, in the case; and for whose dissipation the Bank is entitled to be compensated.

The Trustee has completed liquidation of the estate's remaining assets. Funds available for distribution total $29,307.19. This is less than one-tenth of the total administrative and priority claims in this case, not counting the far larger total of general unsecured claims. By far the largest administrative/priority claim is that of the Bank, for use of its cash collateral. There is not enough money left in the estate to repay the Bank for use of its cash collateral *and* also to pay ordinary administrative expenses such as professional fees. The Bank and other administrative-expense claimants now compete for payment from available funds.

■ The Ch. 7 administrative expenses have priority over Ch. 11 expenses of the same type, pursuant to 11 U.S.C. § 726(b). All parties agree that the administrative expense claims of the Trustee and his attorneys and accountant have first priority over all other claims herein.

The Trustee's original final report proposed to pay about $10,000 for Ch. 7 administrative expenses, and all of the remaining

balance of about $19,000 to the Bank as compensation in part for use of its cash collateral. To this proposal, H & W objected. The Trustee's amended final report proposed to pay, first, Ch. 7 administrative expenses of about $10,000; second, Ch. 11 administrative expenses of $14,200 for H & W's attorney fee and $1,800 for the U.S. Trustee's fee; and third, all of the remaining balance of about $3,000 to the Bank as compensation in even smaller part for use of its cash collateral. To this proposal, the Bank objected.

## CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (M), (O), 11 U.S.C. §§ 361, 363, 503, 507, 726.

Once again, this Court finds itself faced with the unpleasant question of what to do when there is not enough money to go around. See e.g. *In re First Security Mortgage Co., Inc.*, 117 B.R. 1001, 1004 (B.C., N.D.Okl.1990), *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 972 (B.C., N.D.Okl.1990). Pre-petition insolvency is problem enough; but further shortfalls incurred *during* administration of bankruptcy cases present the problem in aggravated form.

11 U.S.C. § 363(c)(2)(B) provides in pertinent part that "[t]he trustee may not use ... cash collateral ... unless ... the court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section." § 363(e) further provides that "at any time, on request of an entity that has an interest in property used ... or proposed to be used ... by the trustee, the court ... shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." The same applies to a Ch. 11 debtor-in-possession, 11 U.S.C. § 1107(a).

That is, cash collateral cannot be used unless the secured creditor is adequately protected against the hazards of such use.

11 U.S.C. § 507(b) provides in pertinent part that

If the trustee, under section ... 363 ... of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from ... the use ... of such property under section 363 of this title, ... then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

"Subsection (a)(1) of this section" refers in turn to § 507(a)(1), which gives first priority of payment to "... administrative expenses allowed under section 503(b) of this title ..." 11 U.S.C. § 503(b) in turn

allow[s] administrative expenses ... including—(1)(A) the actual, necessary costs and expenses of preserving the estate ... [and] (2) compensation and reimbursement awarded under section 330(a) of this title ...

11 U.S.C. § 330(a) allows the Court to "award to a ... professional person ... or to the debtor's attorney—(1) reasonable compensation for actual, necessary services rendered by such ... professional person, or attorney ..." 11 U.S.C. § 331 permits compensation "under section 330 of this title" to be awarded and paid at intervals, before completion of the case; but it supplies no independent right to compensation apart from § 330.

■ That is, whenever a secured creditor's collateral is used for the benefit of the estate, but by mischance "adequate protection" for such use proves inadequate, any remaining estate funds must be paid to said secured creditor by way of recompense for its dissipated collateral, ahead of any other priority claims and administrative expenses including fees of professionals such as attorneys for debtors. Such a claim for recompense for "inadequate adequate protection," given first priority among priority claims by § 507(b), is commonly referred to as a "superpriority."

The case now before this Court is a classic example of "inadequate adequate protection." In such circumstances, the remedy is clear on the face of the statute. The Bank is entitled to be repaid from estate

funds, to the extent that "adequate protection" for use of its cash collateral has proved inadequate, ahead of all other Ch. 11 priority claims and administrative expenses including H & W's fee as attorney for Wise Inc.

H & W argues that, notwithstanding all this, it should be paid its fees ahead of any payments to the Bank. As authority, H & W offers the case of *In re Callister*, 15 B.R. 521 (B.C., D.Utah 1981). The Bank offers in turn the case of *In re Colter*, 53 B.R. 958 (B.C., D.Col.1985), which "expressly rejects the *Callister* decision," Bank's response p. 5.

In *In re Callister*, supra, the Bankruptcy Court for the District of Utah, Mabey, J., awarded interim fees under 11 U.S.C. § 331 to attorneys for debtor and an unsecured creditors' committee, and ordered them paid notwithstanding pendency of a secured creditor's claim for reimbursement for "inadequate adequate protection." The Bankruptcy Court ruled that "[t]here is a presumption that [interim fee awards] will be paid notwithstanding the existence of a superpriority," although such presumption "is rebuttable under appropriate equitable circumstances," *id.*

In *In re American Resources Management Corp.*, 51 B.R. 713 (B.C., D.Utah 1985), Clark, J., the Bankruptcy Court for the District of Utah revisited its previous decision in *In re Callister*. Judge Clark noted that Judge Mabey's decision was properly read in light of the fact that "the debtor [estate] had $323,122 in unencumbered assets," 51 B.R. at pp. 718 n. 14, 720, and see 15 B.R. at p. 523 n. 7, which said funds were sufficient to pay all professional fees *and* superpriority claims in full. The only question was whether, under such circumstances, interim fees might be paid off now, without waiting to pay off the superpriority first. That is, *Callister* concerned mere *timing* of distribution; Judge Mabey properly held that he had some discretion in the *timing* of payments, even if it meant paying an "inferior" professional fee earlier than a "superior" superpriority claim; and in this ruling he was properly affirmed on appeal. But where there was

not enough money to eventually satisfy all administrative-type claims in full, the "circumstances" which might justify judicial use of discretion were missing; and the Court was required by statute to satisfy superpriority-type administrative claims in preference to, and if necessary at the expense of, other types of administrative claims.

The Bankruptcy Court's opinion in *In re Callister* has been much criticized and often rejected, see e.g. *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2nd Circ.1984), *In re KNM Roswell Ltd. Partnership*, 126 B.R. 548 (B.C., N.D.Ill.1991), *In re California Devices, Inc.*, 126 B.R. 82 (B.C., N.D.Cal.1991), *In re Tri–County Water Ass'n*, 91 B.R. 547 (B.C., D.S.D.1988), *In re Colter, Inc.*, supra, *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605 (B.C., N.D.Ohio 1985), *In re Becker*, 51 B.R. 975 (B.C., D.Minn.1985). According to *In re American Resources Management Corp.*, these cases have properly refused to follow an improper reading of *Callister*. *Callister's* real message is consistent with statute; and when *Callister* is so read, it need not be rejected.

This Court agrees, and adopts *In re American Resources Management Corp.'s* interpretation of *In re Callister*.

■ In the present case, interim fees have already been awarded but have never been paid; and the question is not interim disposition of sufficient funds but final distribution of insufficient funds. These circumstances do not support any exercise of judicial discretion. In this case, 11 U.S.C. § 507(b) and related statutes plainly require that, after payment of Ch. 7 administrative expenses, what little money is left in this estate must go to satisfy the Bank's superpriority claim for "inadequate adequate protection," at the expense of H & W's claim for attorney fees for representing the former debtor-in-possession.

Therefore, H & W's "Objection to Trustee's Final Report and Proposed Distribution" is hereby denied and overruled; the Bank's "Response ... [thereto] and Objection to the Amended Trustee's Final Report and Proposed Distribution" is hereby

granted and sustained; the Bank's "superpriority" claim under 11 U.S.C. § 507(b) shall be paid, to the extent possible, from available estate funds, with priority of right over H & W's administrative expense claim for professional fees as attorneys for debtor; and an Order of Distribution shall issue accordingly.

AND IT IS SO ORDERED.