## In re LOCHMILLER INDUSTRIES, INC., Debtor.

### Bankruptcy No. 82–04305–B7.

United States Bankruptcy Court,
S.D. California.

January 31, 1995.

---

Harold S. Taxel, Trustee, La Jolla, CA.

James P. Hill and K. Todd Curry, Sullivan, Hill, Lewin & Markham, San Diego, CA, for Trustee Taxel.

Stephen K. Haynes, San Diego, CA, for David L. Buchbinder, counsel for debtors-in-possession.

Bruce M. Douthit, Ramona, CA, for creditors committee.

Matthew Kissane, Strauss & Kissane, San Diego, CA, for William Derbonne, Examiner.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

The matter before the Court involves issues which are important to all who deal with Chapter 11 debtors, including trade creditors and professionals. In this case, the debtor was unable to reorganize under Chapter 11, and the proceeding was converted to one under Chapter 7. This matter came on for hearing on the noticed motion of the Chapter 7 trustee for an order requiring disgorgement of fees and costs paid to the professionals who served in the pre-conversion Chapter 11 case. In addition, counsel for the trustee seeks authorization to file a supplemental application for fees, and the trustee seeks authorization to close the estate.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

For the reasons set out below this Court orders that the professionals who served in the Chapter 11 case must disgorge the fees and expenses paid to them for such service. After payment of all Chapter 7 administrative claims in full, the trustee shall make a pro rata distribution for Chapter 11 administrative expenses from the remaining funds of the estate. Further, counsel for the trustee shall be permitted to file a supplemental application for fees and costs, and the trustee will be authorized to close the estate.

1. The Chapter 11 petitions on behalf of Lochmiller Industries, Inc., and North County Financial, Inc., were filed on October 6, 1982. The cases were ordered consolidated on or about October 14, 1982 as (Consolidated Case No. 82–04305–M7).

2. On December 29, 1983, the joint Chapter 13 case of Stephen Reid Lochmiller and Judy Kay Lochmiller (the "Lochmillers") was converted to a case under Chapter 7 (Case No. 82–04305–M7). Mr. Taxel was appointed trustee in that case as well. On November 24, 1982 Reid Financial, Inc., wholly owned by the Lochmillers, filed its petition under Chapter 11 of the Bankruptcy

## I

## FACTS

On December 28, 1983 the administratively consolidated Chapter 11 cases of Lochmiller Industries, Inc., and North County Financial, Inc., (the "Lochmiller Entities"), were converted to a case under Chapter 7.[1] Harold S. Taxel was appointed Chapter 7 trustee. This case was subsequently consolidated with two related cases which were also converted.[2] Mr. Taxel, (the "Trustee"), serves as Chapter 7 trustee in the consolidated case.

### A. Payments to Chapter 11 Professionals.

Prior to conversion the following professional persons were employed in the Chapter 11 case: David L. Buchbinder, counsel for the debtors in possession; William Derbonne, examiner; Strauss & Kissane, counsel for the examiner; and Bruce M. Douthit, counsel for the creditors committee, (collectively the "Chapter 11 Professionals"). The Chapter 11 Professionals have been paid $100,683.97 from the bankruptcy estate for fees and expenses incurred prior to the conversion. The payments were allowed and made pursuant to the following interim and final orders:

#### (i) Strauss & Kissane (Counsel for the Examiner).

On April 19, 1983 the Court entered the "Order Allowing Interim Attorney's fees and Costs For Attorney's For Examiner". (The "Strauss & Kissane Interim Order".) The Strauss & Kissane Interim Order provides:

IT IS FURTHER ORDERED that the above interim allowance of fees and costs are expressly subject to further review and

Code. Prior to filing the petition, Reid Financial, Inc., functioned as a mortgage broker and was integrally related to the business operations of the Lochmiller Entities. On May 10, 1984, pursuant to a stipulated order between Mr. Taxel, the Lochmillers and the Lochmiller Entities, the Chapter 11 case of Reid Financial was converted to a case under Chapter 7 and Mr. Taxel was appointed trustee. Pursuant to the same stipulated order the Chapter 7 cases of Reid Financial, the Lochmillers, and the Lochmiller Entities were consolidated for administrative purposes.

possible surcharge at a final fee application hearing herein.[3]

Pursuant to this order the Trustee paid to Strauss & Kissane $2,794.64 from the estate.[4]

On January 18, 1985 the Court entered the "Order Approving Final Allowance of Compensation and Reimbursement of Expenses For Attorney's For Examiner". (The "Strauss & Kissane Final Order".) The Strauss & Kissane Final Order provides:

> IT IS FURTHER ORDERED: That should insufficient assets remain in the estate to sufficiently discharge the administrative expenses of the Chapter 7 proceedings that STRAUSS, KISSANE, DAVIS & HARGROVE shall disgorge said sum to the Estate's Trustee. The payment of fees and costs is further subjected (sic) to disgorgement in the event that the Chapter 7 Estate's assets are insufficient to satisfy Chapter 11 administrator (sic) expenses in full.[5]

Pursuant to this order the Trustee paid to Strauss & Kissane, apparently the successor in interest to Strauss, Kissane, Davis & Hargrove, $5,532.82.[6] Thus, the total amount paid to Strauss & Kissane on its Chapter 11 administrative claims was $8,019.34.

### (ii) William Derbonne (Examiner).

On April 19, 1983 the Court entered the "Order Approving Interim Allowance of Examiner's Fees and Costs". (The "Derbonne Interim Order".) The Derbonne Interim Order provides:

> IT IS FURTHER ORDERED that the above interim allowance of fees and costs are expressly subject to further review and possible surcharge at a final fee application hearing herein.[7]

Pursuant to the Derbonne Interim Order the Trustee paid to Derbonne $16,500.00 from the estate.[8] Like the interim order the "Order Approving Final Allowance of Compensation and Reimbursement of Expenses For Examiner" provides:

> IT IS FURTHER ORDERED: That should insufficient assets remain in the estate to sufficiently discharge the administrative expenses of the Chapter 7 proceedings that Examiner, William Derbonne shall disgorge said award of $13,302.35 to the Estate's Trustee. The payment of fees and costs is further subjected (sic) to disgorgement in the event that the Chapter 7 Estate's assets are insufficient to satisfy Chapter 11 administrative expenses in full.[9]

Pursuant to this order the Trustee paid to Derbonne $13,302.35.[10] Thus, the total amount paid to Derbonne on his Chapter 11 administrative claim was $29,802.35.

### (iii) Bruce M. Douthit (Counsel for Creditors Committee).

On March 20, 1985 the "Stipulation and Order Regarding Disbursement of Chapter 11 Administrative Expenses" (the "Douthit Stipulation") was entered. The Douthit Stipulation provides:

> It is hereby stipulated ... that the balance of $5,730.06, constituting the fee allowance made by the Court on Douthit's first application for fees ... shall be paid to Douthit forthwith by the trustee, provided, however, that should insufficient assets remain in the estate to discharge the administrative expenses of the Chapter 7 proceedings, that Douthit shall disgorge his entire award of $20,800.26 to Harold S. Taxel, trustee. In addition, the payment of Douthit's award in the amount of $20,-800.26 is subject to disgorgement in the event that the Chapter 7 estate assets are

---

3. Strauss & Kissane Interim Order at p. 2.

4. See declaration of K. Todd Curry filed in support of the motion (the "Curry Declaration") at ¶ 14.

5. Strauss & Kissane Final Order at p. 2.

6. See declaration of the Trustee filed in support of the motion (the "Taxel Declaration") at ¶ 10.

7. Derbonne Interim Order at p. 2.

8. See "Order Approving Final Allowance of Compensation and Reimbursement of Expenses For Examiner" which was entered on February 5, 1985 at p. 2.

9. Derbonne Final Order at p. 2.

10. Taxel Declaration at ¶ 8.

insufficient to satisfy the Chapter 11 administrative expenses in full.[11]

The $5,730.06 was paid to Douthit.[12] Thus, the total amount paid to Douthit on his Chapter 11 administrative claim was $20,800.26.

### (iv) David L. Buchbinder (Counsel for Debtors in Possession).

On August 14, 1984 the Court entered the "Order Authorizing Payment of Interim Fees and Costs" in favor of various professionals including Buchbinder (the "Combined Order"). The Combined Order provides:

> The fees awarded by this order are subject to further review in conjunction with final fee applications to be filed by the applicants, and applicants are subject to surcharge in the event the funds of these administratively consolidated estates are insufficient to pay all administrative expenses of equal priority.[13]

Pursuant to the Combined Order, Buchbinder was awarded $2,933.36 as interim Chapter 11 fees and costs and $2,241.10 as interim Chapter 7 fees and costs. Buchbinder was paid the full $5,174.46 from the estate.[14]

On or about November 15, 1985, Buchbinder filed and served a fee application entitled "Third and Final Application For Attorneys' Fees and Costs Advanced For Services Rendered the Debtors in Possession and Debtors From September 28, 1982 to October 25, 1985", (the "Application"). In the Application Buchbinder stated that he had previously received $26,101.45 from the estate including the amount awarded pursuant to the Combined Order.[15] Pursuant to the Application Buchbinder sought fees and costs in the amount of $28,718.77, ($26,718.77 for Chapter 11 fees and costs, and $1,758.84 for Chapter 7 fees and costs.) On December 20, 1985 the Court entered an order on the Application (the "Buchbinder Order") awarding Buchbinder fees and costs in the amount of $25,000.00 without distinction between Chapter 7 and Chapter 11 claims. The Trustee is apparently willing to assume that all of the Chapter 7 fees and costs were awarded, and that the remainder of the award, $23,241.16, is for the Chapter 11 claim.[16] The Buchbinder Order provides:

> This award is an interim award only, subject to further review at a final hearing in this matter and disgorgement by David L. Buchbinder and John L. Smaha should the Court so order.[17] [18]

Pursuant to the Buchbinder Order the Trustee paid to Buchbinder $20,000.00.[19] This figure included payment of the entire Chapter 7 fees and costs requested, $1,758.84, and a partial payment on the Chapter 11 fees and costs allowed, $18,241.16. The total amount paid to Buchbinder for services rendered in the Chapter 11 case is $42,174.52 ($21,000.00 + $2,933.36 + $18,241.16).[20] Buchbinder has an outstanding interim Chapter 11 administrative claim in the amount of $5,000 ($23,241.16 less $18,241.16).

In summary, the payments to the Chapter 11 Professionals on their Chapter 11 administrative claims were as follows:

---

11. Douthit Stipulation at p. 2.

12. Taxel Declaration at ¶ 9.

13. Combined Order at ¶ 4.

14. Taxel Declaration at ¶ 6.

15. Application at p. 7.

16. See Curry Declaration at ¶ 7.

17. Buchbinder Order at ¶ 4.

18. Buchbinder suggests that a final order has been entered on his fees: "Once this Court ... has entered a final order approving the fees..."

See "Memorandum in Opposition to Motion By Chapter 7 Trustee Seeking Disgorgement of Fees" (the "Opposition") at pp. 2–3. This Court has reviewed the file and has not found any such final order. This decision is based upon the interim orders. However, as noted, infra, even the "final" orders for compensation under section 330 are interlocutory and subject to review and modification while the case is pending. The distinction Buchbinder would have this Court make between "interim" under section 331 and "final" would not produce a different result under the circumstances of this case.

19. Curry Declaration at ¶ 7.

20. Curry Declaration at ¶ 8.

| Chapter 11 Professional | Amount Paid |
|---|---|
| David L. Buchbinder (Counsel for the Debtors in Possession) | $ 42,174.52 |
| William Derbonne (Examiner) | $ 29,689.85 |
| Bruce M. Douthit (Counsel for the Creditors Committee) | $ 20,800.26 |
| Strauss & Kissane (Counsel for Examiner) | $ 8,019.34 |
| Total | $100,683.97 |

## B. Allowed and Anticipated Chapter 7 Administrative Claims.

On or about December 23, 1992, the Trustee and all Chapter 7 professionals brought final fee applications.[21] On February 19, 1993 and March 19, 1993, this Court entered orders approving the final applications and authorizing payments to Chapter 7 professionals and the Trustee totalling $66,096.90. Of this amount $29,700.00 has been paid.[22] The sum of $36,396.90 of awarded Chapter 7 administrative expenses remains unpaid.[23] In addition, the Trustee estimates that an additional $2,000 in administrative expenses will be incurred in closing the estate.[24] Thus, the outstanding Chapter 7 administrative claims are expected to total at least $38,396.90.[25]

## C. Assets of the Chapter 7 Case.

The remaining assets of the Chapter 7 estate total an insufficient $6,000.[26] Thus, the Chapter 7 estate is administratively insolvent in the amount of at least $32,396.90. These figures have not been disputed by the Chapter 11 Professionals so the Court will accept, for the purposes of this motion, a Chapter 7 administrative insolvency in the amount of approximately $32,396.90.

21. Taxel Declaration at ¶ 2.

22. Taxel Declaration at ¶ 3.

23. Taxel Declaration at ¶ 4.

24. Taxel Declaration at ¶ 5.

25. Counsel for the Trustee seeks, and is granted, authorization to apply for attorney fees and costs in connection with this motion. Any fees and costs awarded will necessarily increase the total Chapter 7 administrative claims.

26. Taxel Declaration at ¶ 5.

## D. Present Motion.

By way of the present motion the Trustee seeks, inter alia, an order from this Court directing the Chapter 11 Professionals to disgorge the Chapter 11 fees and expenses paid to them in order to pay in full the remaining Chapter 7 administrative claims. Buchbinder, the only Chapter 11 Professional to file opposition, argues that the Chapter 11 Professionals should not have to bear the expense of the Chapter 7 case alone, but rather that all Chapter 11 administrative claimants should share the burden.[27]

## II

## DISCUSSION

## A. Chapter 7 Administrative Claims Have Priority Over Administrative Claims incurred in the Converted Chapter 11 Case.

■ Bankruptcy Code section 726(b) provides in part:

[I]n a case that has been converted to this chapter under section 1009, 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter 7 after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion . . .

.11 U.S.C. § 726(b).[28] It is well settled that administrative claims arising from a Chapter 11 case are, after conversion, subordinate to administrative claims arising from the subsequent Chapter 7 case.[29] This is true even if

27. See "Supplemental Memorandum In Opposition to Motion By Chapter 7 Trustee Seeking Disgorgement of Fees" (the "Supplemental Opposition") at p. 2.

28. All section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise indicated.

29. *In re Sun Runner Marine, Inc.*, 134 B.R. 4 (9th Cir. BAP 1991); *In re MacNeil*, 102 B.R. 766 (9th Cir. BAP 1989) (vacated on procedural grounds 907 F.2d 903 (9th Cir.1990)); *In re Hers Cosmetics Corp.*, 114 B.R. 240 (Bankr.C.D.Cal.1990); *In re Tandem Group, Inc.*, 61 B.R. 738 (Bankr.

the Chapter 11 claims enjoyed section 507(b) "superpriority" arising from failure of adequate protection.[30] The reason for this hierarchy is simple: "Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate." H.R.Rep. No 95–595, 95th Cong., 1st Sess. (1977) 186–87, 1978 U.S.Code Cong. & Admin.News 5787, 6147.

Buchbinder does not dispute this rule of priority.[31] Buchbinder's objection to the Trustee's motion is rather that the Chapter 11 Professionals should not be singled out to make up the entire Chapter 7 administrative insolvency. Buchbinder argues that any disgorgement to be made by the Chapter 11 Professionals should be limited to "that portion of their fees that exceeds the pro rata share obtained by dividing payment on all Chapter 11 administrative claims (including expenses paid by the debtor-in-possession in the ordinary course of business) by the total of all Chapter 11 administrative claims."[32] As set out below, this is not an option.

## B. Payments Made In Ordinary Course of Chapter 11 Case May Not Be Recovered.

■ Code section 1108, together with sections 363(c)(1) and 1107, authorizes a debtor in possession, such as the Lochmiller Entities, to make payments to trade creditors without prior Court approval so long as such payments are made in the ordinary course of the debtor's business.[33] Buchbinder's objection to the motion would either require trade creditors who were paid in the ordinary course of the Chapter 11 case to disgorge a portion of those payments to help make up the Chapter 7 administrative insolvency or would result in recovery of insufficient funds to pay the Chapter 7 administrative claims in full. Although the Code provides no express priority between payments made to trade creditors in the ordinary course and those made to professionals pursuant to Code sections 330 and 331, the cases addressing this issue have uniformly held that payments made in the ordinary course may not be recovered.

In *In re Western Farmers Association*, 13 B.R. 132 (Bankr.W.D.Wash.1981), the court denied some applications for interim payment of fees because it recognized that a conversion was possible and there did not appear to be sufficient assets to pay all administrative expenses in full. The court distinguished between payments for administrative services and payments made in the ordinary course, stating:

> When there is the possibility that the assets of the estate will not be sufficient to cover all expenses of administration, it is legally improper to pay one expense of the debtor or debtor-in-possession before paying another, *except those incurred in the ordinary course of the debtor-in-possession's business operation.*

*Id.* at 136 (emphasis added).[34] Ordinary course administrative expenses are authorized to be paid immediately unlike the claims of professionals.

In *In re Manwell*, 62 B.R. 533 (Bankr. N.D.Ind.1986), a Chapter 11 debtor in possession died leaving his bankruptcy estate administratively insolvent. *Id.* at 534. Upon

---

C.D.Cal.1986); *In re Price Chopper Supermarkets, Inc.*, 19 B.R. 462 (Bankr.S.D.Cal.1982).

**30.** *In re Sun Runner Marine, Inc.*, 134 B.R. 4 (9th Cir. BAP 1991); *In re Wise Transportation, Inc.*, 148 B.R. 52 (Bankr.N.D.Okl.1992); *In re Flynn's Const., Inc.*, 166 B.R. 1 (Bankr.D.Me.1994); *In re California Devices, Inc.*, 126 B.R. 82 (Bankr. N.D.Cal.1991).

**31.** See "Memorandum In Opposition to Motion By Chapter 7 Trustee Seeking Disgorgement of Fees" (the "Opposition") at p. 1.

**32.** Opposition at p. 2.

**33.** *In re Kearing*, 170 B.R. 1, 7 (Bankr.D.Dist.Col. 1994); *In re Telesphere Communications, Inc.*,

148 B.R. 525, 530 (Bankr.N.D.Ill.1992); *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255, 257 (Bankr.N.D.Ohio 1989); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 945 (Bankr.W.D.Tex.1994).

**34.** The court in *Western Farmers* made a distinction between professionals providing services relating to the business of the debtor in possession, such as actuaries and patent attorneys, and professionals providing administrative services, such as counsel for the debtor in possession. The court ordered that the former be paid at the time of the order but that the latter await payment. *Id.* at 136.

discovery of this insolvency the trustee appointed therein filed an adversary proceeding seeking to recover funds which passed through the Chapter 11 estate while the debtor in possession was operating the business. *Id.* The court dismissed the adversary proceeding because the trustee did not allege that any of the payments made by the debtor in possession were anything but ordinary course payments made pursuant to section 1108 which are not recoverable. *Id.* The court, citing *Western Farmers,* stated:

> The expenses which a chapter 11 debtor incurs and pays in the ordinary course of his business can not be avoided.... The alternative would make it impossible for any prudent business person to voluntarily do business, even on a cash basis, with a chapter 11 debtor.

*Manwell,* 62 B.R. at 534.

In *In re Vernon Sand & Gravel, Inc.,* 109 B.R. 255 (Bankr.N.D.Ohio 1989), a case converted to Chapter 7, counsel for the debtor in possession sought payment of fees incurred during the Chapter 11 case. *Id.* at 256. The estate was sufficient to pay the Chapter 7 administrative expenses but was not sufficient to pay all of the Chapter 11 administrative expenses. *Id.* Although the court recognized that in theory all Chapter 11 administrative claimants should be paid an equal share of their claims it also realized that this was unworkable as a practical matter. *Id.* at 258. The court held that it could not require administrative claimants who were paid in the ordinary course to disgorge those payments. *Id.* The court reasoned that such a holding would render operation as a debtor in possession impossible:

> If delays for court approval would deal a staggering blow to debtors-in-possession, then the possibility that these expenses could later be subject to a pro-rata reduction would be the knockout punch. Businesses operating under Chapter 11 would not be able to retain employees, hire outside services, or even maintain accounts with utility companies if each of these payments were subject to refund at a later date if the business eventually converts to

liquidation bankruptcy. Practical necessities require that administrative expenses resulting from the ordinary course of business be paid immediately and not be subject to any pro-rata reductions.

*Id.* at 257. As discussed below, the court stated that professionals, on the other hand, could be required to disgorge. *Id.* at 258.

■ In *In re Telesphere Communications, Inc.,* 148 B.R. 525 (Bankr.N.D.Ill.1992), a lessor filed a motion seeking to compel the debtor to pay postpetition rent pursuant to section 365(d)(3) of the Code. *Id.* at 526. The debtor objected to the motion on the grounds that it appeared that there may be insufficient funds in the estate to pay all administrative claims and thus the lessor should wait until a pro rata amount could be determined and paid to all administrative claimants. *Id.* The court recognized the debtor's concerns as real possibilities but nevertheless granted the motion. *Id.* at 532. The court, relying on *Vernon Sand & Gravel,* recognized that ordinary course claims received better treatment than others:

> Although it appears that no other decision to date has addressed the question [footnote omitted], vendors who receive payments from the trustee or debtor in possession, for value in the ordinary course of business under Section 363(c)(1), need not fear that the money they receive is subject to disgorgement.... Thus, operational payments, by their nature, enjoy a de facto priority over other administrative expenses, without any express provision for superpriority.
>
> . . . . .
>
> [T]here would have been no reason for Congress to have provided any express grant of superpriority for Section 365(d)(3) rent payments—such a "superpriority" is implicit in the direction that the debtor make the payments without court involvement.

*Id.* at 531.[35]

In *In re Florida West Gateway, Inc.,* 166 B.R. 981 (Bankr.S.D.Fla.1994) the court held

---

**35.** The issue of whether section 365(d)(3) grants landlords "superpriority" has not been decided in this district. See *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401 (9th Cir.1994). Thus, al-

that prior ordinary course payments are not to be considered when dividing the remaining assets of an administratively insolvent estate. *Id.* at 985. In *Florida West* a supplier of airplane fuel moved for a pro rata payment on its outstanding bill. *Id.* at 982. The trustee objected arguing that, taking into consideration the previous amounts paid to this supplier over the course of the case, a payment on the outstanding bill would result in a greater total payment to this creditor than to other administrative claimants. *Id.* The court stated:

> [I]f the Trustee's assertion is correct, then every employee, utility company, supplier and vendor paid in the ordinary course of business during a Chapter 11 case could be subject to a pro rata reduction of its unpaid claim or even disgorgement. Such a rule would virtually eliminate the ability of any Chapter 11 Debtor to operate ...

*Id.* at 982–83. Relying on the reasoning in *Western Farmers, Vernon Sand & Gravel,* and *Telesphere,* the court directed the trustee to make a pro rata payment to the supplier without consideration of previous payments. *Id.* at 985.

In *In re Kearing,* 170 B.R. 1 (Bankr. D.Dist.Col.1994), a case discussed at length below, a Chapter 7 trustee moved to recover interim compensation paid to counsel for the debtor in possession in the converted Chapter 11 case in order to effect a pro rata distribution to all Chapter 11 administrative claimants. *Id.* at 3. The court held that the trustee could recover from counsel for the debtor in possession upon a showing of administrative insolvency, but, repeating the rule of *Vernon Sand & Gravel,* could not recover from those claimants paid in the ordinary course. *Id.* at 7–8.

Buchbinder cites *In re IML Freight, Inc.,* 52 B.R. 124 (Bankr.D.Utah 1985) for the proposition that the Court has no authority to create priorities among administrative claimants. Buchbinder argues that requiring only the Chapter 11 Professionals to disgorge would in effect grant higher priority to Chapter 11 administrative expenses incurred and paid in the ordinary course than to the administrative claims of the Chapter 11 Professionals. The holding in *IML Freight* is not that broad. Rather, the court in *IML Freight* rejected the argument that the claims of professionals enjoyed a statutory "preeminence" and need not share pro rata with other administrative claimants. *Id.* at 140. In *IML Freight* professionals in a superseded Chapter 11 sought payment of awarded fees in full. *Id.* at 125–30. There appeared a good chance that the estate was insufficient to pay all Chapter 11 administrative claims. *Id.* at 140. After a lengthy discussion on the origins of priorities in general the court dismissed the argument by the trustee that the fees of the professionals should be afforded a priority over other Chapter 11 administrative claimants. *Id.* The court held that payment in full would not be made but rather the professionals would be paid pro rata with the other administrative claimants at such time as a decision could be reached as to the percentage which would be paid on Chapter 11 administrative claims. *Id.* The court therein did not hold that disgorgement could be had from claimants paid in the ordinary course. *IML Freight* is also distinguishable from the other cases cited and from the present case in that the court addressed only outstanding administrative claims. The court did not address the issue of what to do if too great a share of the estate had already been paid out in the ordinary course as well as to professionals.

As far as this Court is aware all of the cases which have addressed the issue have uniformly held that funds paid to administrative claimants in the ordinary course of a Chapter 11 case may not be recaptured. This Court is aware of no case in which a court has held that a payment made in the ordinary course could be recovered. This Court agrees with the cases cited and holds that disgorgement may not be had of claimants paid in the ordinary course.[36] In this

---

though this Court relies on the dicta in *Telesphere* regarding the nonrecoverability of payments made in the ordinary course, it does not purport to adopt its holding that postpetition rent is granted a "superpriority" by virtue of section 365(d)(3).

**36.** In light of this ruling, Buchbinder's stated concern, that a debtor would have to check the

Court's view, statutory authorization for payment of ordinary course expenses contrasts with the discretionary authorization to award interim compensation to professionals, (11 U.S.C. § 363 and §§ 330 and 331), and supports such a result.

## C. The Fees of the U.S. Trustee Are not Subordinated to the Chapter 7 Administrative Expenses and Are Thus Not Subject to Disgorgement.

 The majority of the courts addressing the issue have held that U.S. Trustee's fees which came due during the Chapter 11 case enjoy, upon conversion, the same priority as the Chapter 7 administrative expenses whether they were paid or not.[37] Although some courts have held to the contrary,[38] the better reasoned rule is that of the majority.

> Section 507(a)(1) provides first priority to: [A]dministrative expenses allowed under section 503(b) of this title, *and* any fees and charges assessed under chapter 123 of title 28.

11 U.S.C. § 507(a)(1), (emphasis added). The fees of the U.S. Trustee are provided for under Chapter 123 of Title 28, specifically 28 U.S.C. § 1930(a)(6). Thus, although administrative claims under section 503(b) and the fees of the U.S. Trustee are initially granted the same priority, they are treated separately. Section 726(b) provides only that a claim allowed under 503(b) after conversion has priority over claims allowed under 503(b) incurred under another chapter. Section 726(b) does not refer to, and hence does not

subordinate, claims arising pursuant to Chapter 123 of Title 28. There is no statutory basis for subordinating U.S. Trustee's fees incurred during the Chapter 11 case to administrative expenses incurred after conversion to Chapter 7.

The court in *Ehrman,* contending that it was following the decision of the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") in *Sun Runner*[39], held that the fees of the U.S. Trustee incurred in Chapter 11 were subordinated to Chapter 7 administrative claims. *Ehrman,* 171 B.R. at 685. The court stated that there is no reason to elevate the U.S. Trustee's fees to the same level as Chapter 7 administrative claims. *Id.* at 685–86. This Court disagrees with this reasoning. But for section 726(b) there would be no subordination of any of the priority claims of section 507(a)(1). It is only because section 726(b) specifically mandates the subordination of pre-conversion administrative expenses to post-conversion administrative expenses that such subordination occurs. However, there is no such affirmative subordination of the U.S. Trustee's fees. The only dictate in the Code which applies to the fees of the U.S. Trustee is section 507(a)(1) which affords them first priority. The question then is not whether the fees of the U.S. Trustee should be elevated, but rather whether they should be subordinated. There are no statutory grounds by which a court could properly subordinate the fees of the U.S. Trustee to the administrative claims of the Chapter 7 case and this Court declines to do so.[40]

---

credit rating of each trade creditor to ensure that such trade creditor would be able to disgorge payments made, is moot. See Opposition at p. 3.

**37.** *In re Juhl Enterprises, Inc.,* 921 F.2d 800 (8th Cir.1990); *In re Darmstadt Corp.,* 164 B.R. 465 (D.Del.1994); *In re Bancroft Laundry Center, Inc.,* 164 B.R. 586 (Bankr.N.D.Ohio 1994); *In re AM–PM Photo Camera Fashions, Inc.,* 116 B.R. 222 (Bankr.D.Id.1990); *In re K & M Printing & Lithographing, Inc.,* 135 B.R. 404 (Bankr.D.Or. 1992).

**38.** *In re Ehrman,* 171 B.R. 683 (Bankr.D.Ariz. 1994); *In re Endy,* 166 B.R. 438 (Bankr.D.Nev. 1994); and *In re Wetmore,* 117 B.R. 201 (Bankr. W.D.Penn.1990).

**39.** The court in *Ehrman* expressly recognized that the BAP did not address this issue in *Sun*

*Runner:* "The *Sun Runner* court's holding did not specifically deal with unpaid quarterly fees ..." *Ehrman,* 171 B.R. at 684. This Court does not find the BAP's ruling in *Sun Runner* on the priority to be afforded Chapter 11 claims under section 507(b) to be applicable to or controlling of the issue of priority of U.S. Trustee's fees. See e.g., *In re Darmstadt Corp.,* 164 B.R. 465 (D.Del. 1994) in which the court considered *Sun Runner* on the issue of U.S. Trustee's fees and apparently found it inapplicable.

**40.** This line of cases, *Juhl Enterprises,* et al., could create an interesting problem in a converted case in which a creditor asserts a section 507(b) "superpriority claim". As discussed above at section III.A., the BAP has held in *In re Sun Runner Marine* that section 507(b) "superpriority" administrative claims were subordinated

## D. The Chapter 11 Professionals Must Disgorge Amounts Paid to Them As Chapter 11 Administrative Claims.

■ The only remaining source of funds with which to effectuate payment to the Chapter 7 administrative claimants are those funds previously paid to the Chapter 11 Professionals as fees and costs. Neither the parties to this action nor this Court have discovered a case in which Chapter 11 professionals were actually ordered to disgorge fees and costs paid. However, numerous courts have recognized their authority to order disgorgement of professional fees to effectuate full payment to higher priority claimants or for pro rata distribution to claimants with the same priority.[41] Further-more, this Court has discovered no cases in which a court held, or even stated, that the fees paid a professional were not subject to disgorgement.

In *In re Kearing*, the court held that it could require a professional to disgorge interim compensation upon a showing of administrative insolvency. In *Kearing* the Chapter 7 trustee sought an order requiring the counsel for the former debtor in possession, Toombs, to disgorge fees paid on an interim basis. The court held that the trustee could recover such fees "to effectuate a pro rata distribution among Chapter 11 administrative claimants ..." *Id.* at 2. The court put off a determination of the amount that would have to be disgorged until the

---

to Chapter 7 administrative claims. The problem is that section 507(b) provides that claims arising from lack of adequate protection "shall have priority over every other claim allowable under [subsection (a)(1)]." Subsection (a)(1) includes the fees of the U.S. Trustee. Thus in a case converted to Chapter 7 in which a creditor holds a "superpriority" claim the Code provides two apparently divergent instructions. Pursuant to section 726(b), as interpreted by the BAP, the Chapter 11 administrative claims, including the "superpriority" claims, are subordinated to the Chapter 7 administrative claims. According to *Juhl Enterprises*, et al., the fees of the U.S. Trustee are not subordinated. The order of priority would thus be first to Chapter 7 section 503(b) administrative claims *and* U.S. Trustee's fees, second to Chapter 11 section 507(b) "superpriority" claims, and third to Chapter 11 section 503(b) administrative claims. Code section 507(b), however, provides that the "superpriority" claims, arising from failure of adequate protection, are to have priority over all section 507(a)(1) claims, which would include the fees of the U.S. Trustee.

In *In re Wise Transp., Inc.*, 148 B.R. 52 (Bankr. N.D.Okl.1992) the court, without expressly addressing the issue, held that "superpriority" claims take over the Chapter 11 fees of the U.S. Trustee. In *Wise* the Chapter 7 trustee proposed to distribute the remaining assets of the estate as follows:

[F]irst, Ch. 7 administrative expenses of about $10,000; second, Ch. 11 administrative expenses of $14,200 for [counsel for the debtor-in-possession] and $1,800 for the U.S. Trustee's fee; and third, all of the remaining balance of about $3,000 to the Bank as compensation ... for use of its cash collateral.

*Id.* at 54. The court upheld the Bank's objection to this disbursement and, without expressly addressing the claim of the U.S. Trustee, ordered that the funds be disbursed first to the Chapter 7 administrative claimants with the remainder to the Bank on its "superpriority claim", thus making no payment on Chapter 11 administrative expenses nor to the U.S. Trustee. *Id.* at 56.

**41.** See, e.g., *In re Kearing*, 170 B.R. 1 (Bankr. D.Dist.Col.1994), (discussed below); *In re NTG Industries, Inc.*, 118 B.R. 606 (Bankr.N.D.Ill. 1990), (fees to attorney for creditors committee allowed subject to disgorgement in event of administrative insolvency); *In re Gherman*, 114 B.R. 305, 307 (Bankr.S.D.Fla.1990), (fees allowed to accountant for trustee subject to disgorgement to extent distribution determined to be excessive); *In re Barron*, 73 B.R. 812 (Bankr. S.D.Cal.1987), (interim payments made subject to disgorgement to extent necessary to ensure pro rata payments among professionals); *In re Kaiser Steel Corp.*, 74 B.R. 885, 891 (Bankr. D.Colo.1987), ("Certainly, it is clear that if some administrative expenses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro rata."); *In re Wabash Valley Power Association Inc.*, 69 B.R. 471, 475 (Bankr. S.D.Ind.1987), (interim fees paid to counsel for creditors committee with recognition that the fees were refundable if necessary to pro rate); *In re Energy Co-op., Inc.*, 55 B.R. 957 (Bankr. N.D.Ill.1985), (discussed below); *In re American International Airways, Inc.*, 47 B.R. 716 (Bankr. E.D.Pa.1985), (interim fees recoverable in order to make pro rata distribution); *In re Burlington Tennis Associates*, 34 B.R. 839 (Bankr.D.Vt. 1983), (interim compensation allowed subject to provision that applicant later reimburse the estate for any amount determined to be over pro rata share); *In re Vermont Real Estate Investment Trust*, 26 B.R. 905 (Bankr.D.Vt.1983), (interim compensation allowed subject to provision that applicant later reimburse the estate if it became necessary to pro rate).

trustee provided evidence on the administrative insolvency and "the amount by which Toombs received more than his pro rata share as a Chapter 11 administrative claimant." *Id.*

In *Kearing* Toombs argued that he should be allowed to rely on the interim orders pursuant to which he was paid because no "holdback provisions" were included therein. *Id.* at 5. The court rejected this argument on the grounds that interim orders are not final and that Toombs himself treated the orders as interlocutory.[42] *Id.* The court distinguished between payments made pursuant to an interim order and those made pursuant to a confirmed plan stating that the latter could not be "reeled in" in the event of subsequent administrative insolvency. *Id.* at 6–7.[43] The Chapter 11 Professionals in this case are in no better position than Toombs. The order pursuant to which Buchbinder was paid was an interim order and specifically provided for disgorgement. The orders pursuant to which Derbonne, Douthit and Strauss & Kissane were paid were final but they also specifically provided for disgorgement in the event of administrative insolvency. Like Toombs, none of the Chapter 11 Professionals can be heard to argue that they relied on the finality of their respective orders.

In *IML Freight,* cited by Buchbinder and relied on by the court in *Kearing,* the court was asked to authorize interim payment to Chapter 11 professionals from an estate that appeared to be administratively insolvent. That court too recognized its authority to order disgorgement, stating:

> The question is whether the Court should now, in the face of the estate's certain inability to pay all Chapter 11 administrative expenses in full, authorize full payment to the trustee's accountants and attorneys, and the other Chapter 11 professionals, knowing that some measure of such fees will have to be repaid in order to effect a pro rata distribution with other claimants.

*IML Freight,* 52 B.R. at 139. The court in *Kearing* pointed out that while the court in *IML Freight* did not order disgorgement "the court did recognize its authority to require the repayment of such fees in order to effect a pro rata distribution with other claimants." *Kearing,* 170 B.R. at 7.

The *Kearing* court also relied on *In re Energy Co-op., Inc.,* 55 B.R. 957 (Bankr. N.D.Ill.1985) which ordered that Chapter 11 administrative claims be paid in part over the objection of those asserting superpriority claims. The court in *Kearing* summarized the rationale as follows:

> [W]here it was determined that there were sufficient assets in the estate to pay priority claims, court allowed interim payment of 25% of allowed professional fees, noting that an inaccurate determination of whether there will be sufficient assets in the estate to cover priority claims will not ultimately harm any claimholder in light of the fact that fees improvidently granted will be returned to the estate for distribution to such a claimholder.

*Kearing,* 170 B.R. at 7. The court in *Energy Co-op.,* referred to its power to order fees returned as a "failsafe mechanism afforded the objectors by the fact that fees will be disgorged if there is ultimately a shortfall ...." *Energy Co-op.,* 55 B.R. at 970.

Each of these courts have recognized their authority to require disgorgement of professional fees for payment to higher priority claimants or for pro rata distribution to claimants with the same priority. The court in *Kearing* recognized that Code section 726(b) did not specifically authorize recapture but rather found authority in Code section 105. *Id.* at 7. The court concluded:

> Thus, the court concludes that it has the power to order the disgorgement of professional fees paid pursuant to orders granting interim compensation under section 331, in order to carry out the provisions of section 726(b) and ensure that administra-

---

**42.** In order to appeal one of the orders Toombs filed a motion for leave to appeal pursuant to Bankruptcy Rules 8001(b) and 8003(a), thereby acknowledging the interlocutory nature of the order. *Kearing,* 170 B.R. at 5.

**43.** Accord *In re Erie Hilton Joint Venture,* 157 B.R. 244 (Bankr.W.D.Pa.1993).

tive claimants are paid their pro rata share of estate assets.

*Id.* [44, 45]

Many of the courts cited to above have recognized that the disparate treatment afforded professionals appeared at first blush inequitable. In *Vernon Sand & Gravel,* the court recognized that the Chapter 11 professionals would not share equally in the estate, but was unmoved:

> These claimants will not share equally because, as noted, we cannot require paid ordinary course expenses to be refunded without paralyzing the Chapter 11 business. It is fairly well-settled, however, that this Court may require professional fees to be disgorged to achieve a pro-rated deduction.

*Id.* at 258. The court recognized the apparent harshness of requiring only the professionals to disgorge but reasoned that these professionals were in the best position to recognize and avoid amassing fee bills in a case that appears destined for liquidation. *Id.* at 258–59. The court quoted *In re Pacific Forest Ind., Inc.,* 95 B.R. 740 (Bankr. C.D.Cal.1989):

> The Code ... deals differently with fees of professionals than with payment of other people who provide services to the debtor. Employees do not need 'permission' to be paid and are usually paid as part of the on-

going operation of the business.... It is only those who deal with the actual reorganization of the debtor (rather than the on-going business of the debtor) who are required to be employed under Section 327 and whose applications for payment must be approved by the court. [The court then notes the careful scrutiny given to fee applications of professionals].

> Whether congress intended it or not, the fact that attorneys for the debtor-in-possession will not be paid on a regular basis keeps the attorney alert to the on-going reorganization chances of the debtor. It does the attorney no good to build up a massive Chapter 11 administrative claim, which will then be subordinated in a later Chapter 7. *Pacific Forest,* 95 B.R. at 743.

*Vernon Sand & Gravel* at 258–59.[46]

The argument made by Buchbinder, that the amount of his disgorgement should be limited to a pro rata share of the Chapter 7 administrative insolvency, was made by counsel for the displaced debtor in possession in *Kearing. Kearing,* 170 B.R. at 3. The court rejected this argument. *Id.* at 8. This Court agrees with the holding in *Kearing.* If, as established above, recovery may not be had of those claimants paid in the ordinary course then a pro rata disgorgement, based on all amounts paid in the Chapter 11 case, would not suffice to pay the Chapter 7 administrative claimants in full. The result is

---

**44.** The court in *Kearing* did not expressly state that it was addressing only the administrative claims of professionals, however, it is implicit in the opinion. In dismissing Toombs' defense of statute of limitations the court stated: "To hold otherwise would frustrate this court's ability to assure equality amongst administrative claims of professionals." *Id.* at 4. Also, like the courts discussed in Section II above the *Kearing* court distinguished between payments to professionals and those made in the ordinary course, agreeing that the latter are not subject to any pro rata deductions after they are paid. *Id.* at 7.

**45.** Code section 330(a)(5), added by the Bankruptcy Reform Act of 1994, and hence not applicable to this case which was commenced in 1982, provides:

> The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of

compensation awarded under this section, may order the return of the excess to the estate.

**46.** Ultimately, the court in *Vernon Sand & Gravel* did not require disgorgement for several reasons. First, and most importantly, the trustee had not requested disgorgement. Second, the court decided that the recollection efforts would be of little value in that they would result in a increase in the pro rata share of only ($.09). Third, the court found that the policy articulated in *Pacific Forest* was intact in that the attorney would be more aware of the availability of funds in the future. Finally, counsel for the debtor in possession had performed some services for the Chapter 7 estate and probably had a Chapter 7 administrative claim. *Id.* at 259. In the case at hand, disgorgement will be ordered. Unlike the situation in *Vernon Sand & Gravel,* recovery of the fees paid will result in a substantial increase in payment to Chapter 7 administrative claimants from just over half to payment in full. Furthermore, disgorgement has been requested in this case.

that one group of administrative claimants, Chapter 7 or Chapter 11, must bear the risk of nonpayment. In light of the clear priority afforded the Chapter 7 administrative claims under Code section 726(b), this Court must conclude that it is the Chapter 11 claimants which must bear the risk. The recovery to be had from the Chapter 11 Professionals will thus not be limited to a pro rata share of the entire amount paid out in the Chapter 11 case.

Further, and based upon the same rationale, the amount which the Trustee shall be allowed to collect from any of the Chapter 11 Professionals shall not be divided pro rata among them. The risk that one or more of them may not be able to return the amounts paid is most properly borne by the Chapter 11 Professionals. Once the Trustee has recovered sufficient funds to pay all of the Chapter 7 administrative claims in full, any Chapter 11 Professional who, by virtue of disgorgement or otherwise, has not received a pro rata share of the amounts paid to the Chapter 11 Professionals may move this Court for an appropriate order requiring redistribution among the Chapter 11 Professionals.

### E. Counsel for the Trustee is Authorized to Submit a Supplemental Application for Fees and Costs.

■ After orders were entered on the final fee applications, the Trustee determined there were insufficient funds remaining to pay the allowed Chapter 7 administrative expenses in full. The Trustee then made demand upon the Chapter 11 Professionals for disgorgement.[47] Only after the Chapter 11 Professionals declined to return to the estate the monies previously paid to them did the Trustee then bring the instant motion for disgorgement.[48] The Chapter 11 Professionals should not be heard to complain about payment to the Chapter 7 Trustee's attorneys for work necessitated by the refusal of the Chapter 11 Professionals to honor the Trustee's demand. Accordingly, counsel for the Trustee is authorized to submit a supplemental application for fees and costs.

### F. The Trustee is Authorized to Proceed to Close the Consolidated Estate.

This motion is unopposed, is well taken, and is granted.

### III

### CONCLUSION

Buchbinder's suggestion, "that any specific creditor should only be obliged to return to the bankruptcy estate the amount by which the payments it received exceeded the pro rata share to which it was entitled", would require the Trustee to either recover from claimants paid in the ordinary course, or pay Chapter 7 administrative claims less than the full amount of their claims. The former course of action has been rejected by every court to address this issue and is not authorized by this Court. The latter option, given that the Chapter 11 Professionals have been paid even a small portion of their administrative claims, would violate the clear mandate of section 726(b). The only alternative is to require the Chapter 11 Professionals to disgorge those amounts demanded of them by the Trustee. While this may seem a harsh result it is clear from the orders pursuant to which each was paid that the possibility of disgorgement was considered at the time of the awards.

Accordingly, the Court ORDERS that the Trustee may demand of each or any of the Chapter 11 Professionals disgorgement of the fees and costs paid to such professional for Chapter 11 fees and costs from this bankruptcy estate. Chapter 11 Professionals shall pay to the Trustee the amount of Chapter 11 fees and costs paid to such Chapter 11 Professional from this bankruptcy estate. Upon request the Trustee shall inform the Chapter 11 Professional of all funds collected by the Trustee from whatever source including the other Chapter 11 Professionals.

It is further ORDERED that counsel for the Trustee may file a supplemental application for fees and costs, and that the Trustee

---

47. Taxel Declaration at ¶ 12.

48. Taxel Declaration at ¶ 12.

may proceed to close the consolidated Chapter 7 estate.

IT IS SO ORDERED.